DOTY, Respondent, *v.* INDUSTRIAL ACCIDENT FUND, Appellant.

(No. 7,576.)

(Submitted June 15, 1936.   Decided June 24, 1936.)

[59 Pac. (2d) 783.]

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Dousman* argued the cause orally.

*Mr. James H. Morrow, Jr.,* for Respondent, submitted a brief and argued the cause orally.

514

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Industrial Accident Board has appealed from a judgment of the district court reversing its decision denying compensation to the widow of Orville Doty, who died of lobar pneumonia on May 5, 1934, following an industrial accident suffered on April 27, 1934. The question presented to the board was as to whether or not the accident caused the pneumonia or aggravated a condition which would cause pneumonia. This question was determined by the board in the negative on conflicting expert testimony. The district court reversed the board on the record made before the board alone.

The undisputed facts are that Doty, an FERA worker who was "undernourished" and not in good physical condition, and who had been treated for pleurisy in March, 1934, while holding a plow in hard sod, was struck on the right side by the handle of the plow, or, according to the report of the attending

physician (the osteopathic physician who had theretofore treated him), and the claim filed with the board, the strain of trying to hold the heavy plow in hard ground "pulled a rib out of place." Doty complained of pain in his side, but worked the remainder of the day; there was no work for him the following day. The osteopathic physician attended him on April 29, and, according to his report, "due to the displacement of the rib and then exposure an inflammation was set up right away causing a severe case of pleurisy which terminated in Lobar Pneumonia of the lower right lobe."

Dr. F. I. Sabo, who had just completed his intern work and located at Three Forks, was called in at noon on May 2; he found Doty in a dying condition and called in A. C. Kelly, M. D., and another M. D. for consultation on May 4, but it was then too late to do anything for the patient. Dr. Sabo performed an autopsy on the body, the report of which, as well as the doctor's testimony, is in the record. He testified that the pleurisy "would probably produce an area of reduced resistance, predisposed to pneumonia," and was of the opinion that the injury "could have caused the pneumonia, consequently the death," but admitted that this was the first case in his experience where such was the result, although he had treated similar cases of injury by blows about the chest where the blows were "without crushing injury," and that he did not know whether trauma is accepted as a cause of lobar pneumonia.

Reverting to the osteopath's report and testimony, there was no evidence that Doty was subjected to "exposure"; in fact, the testimony was that on April 27 "it was pretty nice weather; just a little bit cool, no hot day or anything like that."

The affidavit of Dr. A. C. Kelly was received in evidence; therein the doctor recites the history of Doty's case and that on May 4 he found him suffering from "a double pneumonia," and closes: "After consulting with Dr. Sabo and the patient and his wife, I determined on my findings that the man's pneumonia was a condition that was superimposed at the site

of injury to lung and that pneumonia was the direct cause of the man's death and that the injury was a contributing factor in bringing about this pneumonia." There was no opportunity given for cross-examination of this witness.

On the hearing, Drs. S. A. Cooney and J. L. Treacy sat as referee physicians, hearing all of the evidence and questioning the witnesses on the stand, with the understanding that they were to consider the evidence and render their expert opinions, not as witnesses for the board, but "in an impartial way for the benefit of the board." Summarizing the expert opinion of these "referees": Pneumonia only results from severe irritation about the lungs; it is possible that an injury in the region of the ribs might cause a condition that results in severe irritation and pneumonia, but in the absence of a fracture of the rib or crushing, and in view of the fact that the blow described did not even leave a discoloration of the skin, the injury was not sufficiently severe to have caused a condition resulting in pneumonia.

The chairman of the board agreed to permit the claimant to choose a physician to consider the record and report his findings to the board. Dr. Thorkelson, of Butte, was chosen and to him was submitted the entire record, including the report of the post mortem examination. In his report the doctor analyzed the testimony and the report, commenting thereon at considerable length, and, in the course of his discussion, said: "We must bear in mind that injury cannot produce pneumonia. Pneumonia is brought about by a bacterial invasion in the lungs." The doctor explained that an injury severe enough to injure the lungs, or exposure and neglect, can constitute "a predisposing factor which permits pneumonia to develop," but that "it is difficult to imagine that an injury to the chest wall, which leaves no external sign whatever, could possibly cause injury to the lung proper." His deduction is that "the injury is simply a coincidence" and "the accident did not play a part" in causing Doty's death. Taking the identical record on which Dr. Thorkelson based his expert opinion, and without any additional evidence

518

being introduced, the district judge arrived at the opposite conclusion.

Dr. Thorkelson, chosen by the claimant, must certainly be credited with being unbiased, but, aside from his report, the record before the board presented, as shown above, a conflict in the testimony; a conflict between witnesses appearing before the board, thus granting to the chairman the advantage of seeing them on the stand, hearing of their qualifications, and judging as to their credibility and the weight to be given to their testimony, respectively; an advantage not shared by the district judge.

The board is vested with full power, authority, and jurisdiction to try and finally determine all matters respecting compensation, "subject only to review in the manner and within the time in this Act provided." (Sec. 2947, Rev. Codes.) The board is the trier of fact, and its findings are equivalent to the verdict of a jury or the findings of a court sitting without a jury (*Kerns* v. *Anaconda C. M. Co.,* 87 Mont. 546, 289 Pac. 563), and, as in such cases where there is no additional evidence adduced before the court, the re-examination is a review and not a trial *de novo* (*Dosen* v. *East Butte C. M. Co.,* 78 Mont. 579, 254 Pac. 880), the decision of the board can be overturned only if on an examination of the cold record it can be said that the evidence clearly preponderates against that decision (*Rom* v. *Republic Coal Co.,* 94 Mont. 250, 22 Pac. (2d) 161; *Moffett* v. *Bozeman Canning Co.,* 95 Mont. 347, 26 Pac. (2d) 973; *Birdwell* v. *Three Forks P. C. Co.,* 98 Mont. 483, 40 Pac. (2d) 43).

It is true that we sustained the district court in reversing the board "on the record" in the *Moffett Case,* but there the experts, having given their opinion that the claimant's disease was not caused by his injury, frankly stated that they, and the "authorities" generally, did not know what causes that disease and admitted that it is known to "follow" trauma. We therefore held that their answers should have been stricken and "wholly disregarded by the trier of facts." There was, therefore, no substantial evidence in the record of that case

supporting the decision of the board, and there was substantial evidence justifying the judgment of the district court. Herein there is substantial evidence supporting the decision of the board, and, even on the cold record, it is apparent that the preponderance of the evidence is in favor of that decision.

The above rules are peculiarly applicable here, as the trial court "on the cold record" set his judgment as a layman against that of an acknowledged expert authority based on the identical record.

Counsel for the claimant has in his brief quoted from certain ▮ works on the science of medicine and surgery which he contends contradict the expert testimony in the case at bar. These works are not available to us, and we cannot say that the full text would support his position, nor even that the experts quoted do so; but if he is correct, those works were not brought to the attention of the board either by submission as evidence or by cross-examination of the witness on the stand, and cannot now be considered. Where, as here, the appeal presents a review solely, the appeal must be decided by the appellate court upon what was before the trial court; that is, upon the record evidence and nothing else. (*Newell* v. *Whitwell*, 16 Mont. 243, 40 Pac. 866.) This rule applies with equal force to the appeal to the district court and the appeal here. This court has, in this class of cases, appellate jurisdiction only (*Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124), and cannot consider matters *dehors* the record to discredit witnesses who, on the record, appear to be entitled to full credit as men of recognized standing in their profession. However, if we were to consider the works suggested, it does not appear that the doctors, granting, as they did, that a sufficiently severe injury to the chest could predispose the injured party to pneumonia and thus be a contributing cause of death, were not in accord with the consensus of medical opinion on the subject when they declared that the injury sustained by Doty was not such as would bring the case within the declarations made.

Sympathy for the widow is a strong incentive for the award of compensation, but the courts, as well as the board, are bound by the Compensation Act which provides only for compensation for "an injury arising out of and in the course of his employment, or, in the case of his death from such injury" (sec. 2911, Rev. Codes), the burden being upon the claimant to establish by a preponderance of the evidence that the decedent's death resulted from the accidental injury (*Woin* v. *Anaconda C. Min. Co.*, 99 Mont. 163, 43 Pac. (2d) 663, and cases there cited). The claimant having failed to so establish liability, the decision of the board was inevitable, and, as no additional evidence was presented to the trial court, the court erred in reversing the board.

The judgment is reversed and the cause remanded to the district court of the sixth judicial district, with direction to sustain the decision of the board.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied July 22, 1936.