KERNS, APPELLANT, v. ANACONDA COPPER MINING CO., RESPONDENT.

(No. 6,683.)

(Submitted June 9, 1930. Decided June 18, 1930.)

[289 Pac. 563.]

*Mr. Philip O'Donnell* and *Mr. H. A. Tyvand,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. L. O. Evans, Mr. D. M. Kelly, Mr. D. G. Stivers, Mr. John V. Dwyer* and *Mr. John A. Groenweld,* for Respondent, submitted a brief; *Mr. Dwyer* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Maria B. Kerns has appealed from a judgment of the district court of Silver Bow county sustaining the findings and judgment of the Industrial Accident Board, denying her compensation for the death of her husband, John N. Kerns, while in the employ of the defendant, Anaconda Copper Mining Company, and dismissing her claim therefor.

Kerns died at the Murray Hospital, in Butte, on June 8, 1928, as a result of septicemia, or blood poisoning. The following day a coroner's inquest was held, resulting in a verdict merely reciting that "deceased was hit by a rock that fell out of the hopper at the Washoe Sampler property of the A. C. M. Co., according to the evidence introduced at the inquest and the cause of death, blood poison."

On August 12, 1928, Maria B. Kerns filed with the Industrial Accident Board her claim for compensation arising "out of the death of John N. Kerns * * * as a result of injury sustained on the 1st day of June, 1928," etc. Thereafter a hearing was had before the board, on which the testimony taken at the inquest and additional testimony was introduced. The board denied the claim and claimant appealed to the district court. The district court heard the matter on the record made before the board and additional testimony which it permitted to be introduced, and thereafter made findings in which it sustained the findings of the board and found "generally in favor of the defendant and against the claimant," and on these findings entered judgment affirming the decision of the board. Claimant moved for a new trial, which motion was denied, and thereafter appealed from the judgment.

The undisputed facts are as follows: Kerns had been in the employ of the defendant company for a long period prior

to his death and had been married to the claimant for three years. For more than seven years Kerns had suffered from a large ulcer on the front of his left leg between the knee and ankle, which had been treated from time to time by different doctors with little success. On May 12, 1928, he sprained his right ankle, and was confined to his bed under the care of Drs. Worden and MacPherson, physicians for the defendant company. The attending physicians, taking advantage of his enforced idleness, performed a "skin-graft" on the denuded area caused by the ulcer. On May 30 the condition of the ankle and of the skin graft was so satisfactory that Dr. Worden advised Kerns that he might return to work, but cautioned him to be careful of his left leg on account of the danger of infection. Kerns returned to work May 31 and worked that day and the day following, June 1, with his left leg bandaged. On the latter day he returned home at his usual time, about 4:15 P. M. At 9 P. M. he had developed definite symptoms of blood poisoning, from the effects of which he died on June 8. During this period he was attended by three physicians. He made no complaint to the first or second doctor who attended him within twenty-four hours after the symptoms mentioned appeared, but on the day of his death, while in a semi-conscious condition, told Dr. Person, according to the testimony of the doctor, that he was struck on the right leg by a rock. Deceased had a scratch on his right leg, noted by the undertaker after death.

The theory of the Workmen's Compensation Act (Rev. Codes 1921, sec. 2816 et seq., as amended) is that loss occasioned to an employee, by reason of an injury, shall not be borne by him alone but directly by the industry and indirectly by the public, and to accomplish the result intended, its provisions must be liberally interpreted. (*Dosen* v. *East Butte Min. Co.*, 78 Mont. 579, 254 Pac. 880.) However, while every provision of the Act will be liberally construed in order to carry out its humanitarian purpose and such compensation as the Act permits will at all times be awarded, the Industrial Accident Board and the courts are bound by the provisions of

the Act and cannot award compensation in a case for which no provision is made in the Act (*Page* v. *New York Realty Co.*, 59 Mont. 305, 196 Pac. 871), or disregard the plain provisions of the Act (*Chmielewska* v. *Butte & Superior Min. Co.*, 81 Mont. 36, 261 Pac. 616).

The Act is not framed on the theory of life insurance for employees, but on that of compensation for injuries sustained in the course of employment. (*Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 277 Pac. 615.) In each case arising under the Act, the burden rests upon the claimant to establish by a preponderance of the evidence that the injury or death resulted (a) from an industrial accident (b) arising out of and (c) in the course of employment. (*Wirta* v. *North Butte Min. Co.*, 64 Mont. 279, 30 A. L. R. 964, 210 Pac. 332; *Nicholson* v. *Roundup Coal Co.*, 79 Mont. 358, 257 Pac. 270.)

In order to prevail on the claim before us, under the above rules, it was necessary for the claimant to prove by a preponderance of the evidence that the deceased suffered an injury by reason of an industrial accident, and that that injury was the proximate cause of the infection and resulting death. As it is clear from the evidence that the infection entered the blood stream through the denuded area of the old ulcer upon which an operation had been performed a short time before, the burden rested upon the claimant to so prove that the injury suffered, if one was suffered, was upon that area, and that the symptoms exhibited by the deceased at 9 P. M. on the day of the alleged injury could have developed from infection germs entering the wound at the time or subsequent to the time the injury was received.

The question as to whether or not the deceased did, on June 1, suffer an injury to and upon the denuded area of his left leg, was passed by the Industrial Accident Board with the recitation: "On June 1, while some conflicting testimony is in the record, it is practically admitted that he received a slight injury to the left leg which opened the old sore." The board then passed to a careful consideration of the remaining ques-

tions outlined above and, on findings clearly warranting no other decision and sustained by practically uncontradicted testimony, decided that the infection entered the denuded area prior to the injury, which in no way contributed to the cause of death.

From a careful examination of the testimony, it would seem that the evidence clearly and strongly preponderates against the finding contained in the recitation quoted above, and warranted a finding that the deceased did not suffer an injury to the denuded area or "old sore." The only evidence of an injury to the leg on which the "old sore" clearly appeared, is found in the testimony of Mrs. Kerns and one Wizemann. Both of these witnesses testified at the coroner's inquest; Mrs. Kerns again testified on the hearing before the board; Wizemann did not.

Wizemann was Kerns' co-worker at the Sampler on June 1; he testified that at 2:30 or 3 P. M. a rock, four by six inches in size flew out of the hopper and struck Kerns on the left leg; that Kerns "rolled down his sock and showed me the wound there * * * about half an inch square, which tore the layer of skin and just showed a small amount of blood." He described it as "like a skin scratch," on the shin about six inches above the ankle. On cross-examination the witness stated that he saw no old sore on that leg and no bandage, although he saw the leg shown to him up to within four inches of the knee.

It is impossible that this witness was testifying with regard to deceased's left leg, for the denuded area "on the front" of that leg, and between the knee and ankle, was "as large as the palm of your hand."

The undertaker found a scratch on the right leg an inch and a half to two inches long, and it may be that it was the scratch Wizemann saw on the day of the injury, although the two descriptions do not correspond in shape and size.

At the coroner's inquest Mrs. Kerns testified that when Kerns came home on June 1, he told her his left leg was hurt and showed it to her, and that she said, "we will ban-

dage it up so that you won't get any infection.'' Asked to describe the wound, she answered, ''Well, the scratch wasn't very large, bruised all around,'' and that the skin was broken through. On cross-examination she was asked, ''Was there any treatment of the right leg at the time he had the sprained ankle, on the left leg?'' Her reply was, ''No.'' Continuing the examination:

''Did he have skin-graft there? A. No, sir.

''Q. Do you want the jury to understand that Dr. Person or that Dr. MacPherson, or anybody else, didn't make a skin-graft on that sore leg? A. No sir.

''Q. You are sure of that? A. Yes sir. I only knowed him a little over three years.

''Q. Hadn't he had a sore on his leg all that time? A. No sir.''

While counsel confused the right and left legs in his opening question, it is clear that the witness wanted it then understood that the injury shown to her by her husband was not on an old sore but on the otherwise healthy leg. However, testifying before the board three months later, Mrs. Kerns told of the old sore and the skin graft, and testified that, because thereof, his left leg was bandaged when he went to work on the morning of June 1 and when he returned home that night. She described the bandage as being ''awfully dirty, dusty,'' but stated that ''it was always dirty.'' She repeated her statement that her husband told her he was struck by a rock on the left leg somewhere between the knee and ankle; but when asked concerning the condition of the ''raw surface,'' she testified that it was then no different to what it had been before; also, that she saw blood on the ''bottom'' of the bandage, but made no attempt to explain the source thereof.

If, as claimed, there was an abrasion of the surface of the denuded area, it would seem that it would have been a simple matter to have established the fact; the doctors who took care of the infection saw none. According to Wizemann, the wound he saw could not have been the denuded area and the wound he saw bled but little; if it was below the old sore

it could have caused blood on the bottom of the bandage which, presumably, extended below the denuded area; but Wizemann saw no bandage though he saw the leg to within four inches of the knee. The evidence clearly preponderates against the finding that an injury on June 1, "opened up the old sore."

Counsel for claimant contend that, as defendant made no cross-assignment of error, the question cannot now be raised. The trial court was required to make a re-examination of this evidence and render its own judgment thereon (*Dosen* v. *East Butte Copper Min. Co.*, above), and thereon could have, and probably should have, set the finding aside and made its own finding in conformity with the preponderance of the evidence. The court, however, merely held that the findings of the board, generally, were reasonable; sustained the decision of the board and rendered its judgment in favor of the defendant. In order to sustain the judgment we need not determine the question as to whether or not the finding must stand by reason of the failure of the defendant to make a cross-assignment of error; but, assuming that deceased was so injured, proceed to a consideration of the evidence with reference to the question of proximate cause, determined by both the board and the trial court against the claimant.

Four doctors, three of whom attended deceased during the week he suffered from the septicemia, testified before the board, and each gave it as his expert opinion, based on the facts adduced and assuming that deceased was struck by a rock on the denuded area on his left leg, that the germs were not introduced into the old wound by the rock; that the accident had nothing to do with deceased's condition, but that the infection existed in the ulcerated area before the accident; that one receiving an injury after 2 P. M. would not manifest symptoms of general septicemia from infection in that injury by 9 P. M. of the same day.

On appeal to the district court, claimant produced two additional experts, who discussed extreme possibilities in infection cases and gave as their opinion that it was possible

for the symptoms described to manifest themselves within the time stated or even in a shorter period of time.

One of the doctors who testified before the board was called as a witness. He disputed certain of the statements made by claimant's experts, and testified that it would be "very unusual" to get an infection in six hours, and that "in the ordinary practice, you expect the infection to occur not earlier than twenty-four hours."

This summarization of the expert testimony demonstrates that there was a sharp conflict in the evidence on the important question discussed, and that there was substantial evidence to support the findings of the board and of the court, which evidence clearly preponderated in favor of those findings.

The findings of the Industrial Accident Board are equivalent to the verdict of a jury or the findings of a judge, and, on an appeal from the judgment of a district court after review of the decision of the board, this court cannot reverse the judgment unless the evidence clearly preponderates against it. (*Herberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 273 Pac. 294; *Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124; *Morgan* v. *Butte Central M. & M. Co.*, 58 Mont. 633, 194 Pac. 496.)

As the finding that the infection was not the result of the injury received on June 1 is supported by substantial evidence, it is immaterial whether deceased suffered a slight injury on that day or not, conceding that he did and that it opened up the old sore.

Judgment affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.

Rehearing denied July 14, 1930.