SULLIVAN, RESPONDENT, *v.* ROMAN CATHOLIC BISHOP OF HELENA ET AL., APPELLANTS.

(No. 7,590.)

(Submitted September 22, 1936. Decided October 6, 1936.)

[61 Pac. (2d) 838.]

118

*Mr. R. F. Gaines,* for Appellants, submitted a brief and argued the cause orally.

*Mr. H. J. Freebourn* and *Mr. N. A. Rotering,* for Respondent, submitted a brief; *Mr. Rotering* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of the second judicial district.

The controversy involves a death claim under our Workmen's Compensation Act. On September 18, 1933, F. Anthony Sullivan was employed in the Holy Cross Cemetery in Silver Bow county. About 10:30 A. M., while cleaning up rubbish, he was killed by lightning. Thereafter his widow, Lemoine Sullivan, respondent here, presented a claim to the Industrial Accident Board. The claim was considered, and, after hearing thereon, was denied by the board. An appeal was taken to the district court, where the matter was tried upon the record of the board supplemented by some additional evidence. The additional evidence was not very extensive. Claimant merely offered some further testimony as to the surroundings and conditions existing at the time of the accident. Defendant submitted the testimony of two additional witnesses, both of whom testified as experts in the matter of electricity and lightning. The most important additional testimony submitted in the district court was given by one James Fleming. He was the foreman, or boss, in charge of the work at the cemetery. Deceased was working under him.

The essential facts are that Sullivan, in company with one James Rowan, was cleaning up the cemetery. A few minutes before the accident, Fleming, the boss, talked with Sullivan, the deceased, and called his attention to an old piece of pipe, and told Sullivan that when he got to that piece of pipe to "pick it up and put it over with the rest of the pieces." The pipe in question was an inch or an inch and a quarter galvanized metal pipe, and was from seven to ten feet long. After the lightning stroke, both Fleming and Rowan observed the pipe lying close to the body of the deceased. Rowan testified

that when he last observed Sullivan just before the occurrence, Sullivan had the pipe in his hand. Rowan said one end of the pipe was on the ground and the other end extended up two or three feet above Sullivan's head. Some rain was falling and the ground was damp, but not wet. It is admitted by all parties that Sullivan was killed by lightning.

It is admitted that the employer, known as "Roman Catholic Bishop of Helena, Montana, a corporation sole," was registered under the Compensation Act (Rev. Codes 1935, secs. 2816 et seq.), and was operating under Plan 2 (Id., secs. 2978 et seq.), and that Fireman's Fund Indemnity Company was the insurer.

After the hearing before the board, findings were made by the chairman. In the course of these findings it was said: "Some evidence tended to show that he [Sullivan] was carrying a small pipe in his hand at the time he was struck by lightning." The chairman observed that there was little dispute as to the facts regarding the happening, but that there was some question about the matter of whether Sullivan carried the pipe at the time he was struck. This statement in the findings was undoubtedly responsible for the introduction of the additional testimony of the foreman.

The board denied the claim upon the authority of the case of *Wiggins* v. *Industrial Accident Board of Montana,* 54 Mont. 335, 170 Pac. 9, 10, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, a case decided in 1918, about two years after the enactment of our Compensation Law. The chairman called attention to this case as the authoritative holding of this court, but called further attention to the fact that in a subsequent case, *Herberson* v. *Great Falls Wood & Coal Co.,* 83 Mont. 527, 273 Pac. 294, the *Wiggins Case* had been criticized but not specifically overruled. The board therefore took the position that the *Wiggins Case* was in reality controlling in spite of the criticism contained in the later decision.

Evidence in behalf of respondent was introduced to show that lightning had struck more frequently at and about the cemetery where deceased was working than elsewhere about

the city and region of Butte. The witness Fleming, the cemetery foreman, and other witnesses testified to this fact.

The court made findings upon the entire record, including the additional testimony that "Sullivan had an iron or metal pipe in his hands; that at and near said cemetery were many projections, including trees, a pole, and wire fence; that the said pipe in the hands of Sullivan and the said projections made the risk and danger of being killed by lightning greater at said cemetery than elsewhere; that the injury from which Sullivan died arose out of and during the course of the employment," etc.

Both parties agree that only one question is presented here for determination, and that is as to the legal liability of the insurance carrier for the death of the deceased; in other words, was the accident compensable?

Thus it will be observed that the question submitted is in reality a question of law, and that it must be decided in the light of the rule heretofore recognized by this court, that "where, in a civil action, the facts are admitted or undisputed, or where the evidence is 'all in one direction,' the only questions for decisions are those of law." (*Helena Nat. Bank* v. *Rocky Mountain Tel. Co.*, 20 Mont. 379, 51 Pac. 829, 834, 63 Am. St. Rep. 628.) It must further be understood that in such a case this court is in as favorable a position to apply the law as was the district court or the board, and that it will not hesitate to do so. (*In re Wadsworth's Estate,* 92 Mont. 135, 11 Pac. (2d) 788; *Birdwell* v. *Three Forks Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43.)

The defendants, appellants here, rest heavily upon the *Wiggins Case,* supra, and insist that under the language of that case the board was correct in denying the compensation. They insist that in view of all of the facts and evidence as adduced before the board and before the district court, still the *Wiggins Case* is controlling. The respondent insists that the principles announced in the *Wiggins Case,* were later repudiated by the court in the *Herberson Case,* supra. Respondent, however, in an endeavor to avoid the effect of the decision

in the *Wiggins Case,* which was submitted on an agreed statement of facts without any specific testimony with relation to the circumstances of the occurrence, introduced the testimony heretofore mentioned with relation to the iron pipe and the presence of the other projections near the scene of the occurrence. This she did without receding from her contention that the *Wiggins Case* was actually overruled by the *Herberson Case.*

The *Herberson Case* was not a lightning case, but it involved some of the principles considered in the *Wiggins Case,* which did involve death by lightning. Both cases, however, depend upon a construction of the phrase in our statute, "out of and in the course of his employment." (Rev. Codes 1921, sec. 2911.) This phrase is common to most compensation laws. In the *Wiggins Case* the court called attention to the fact that our Act contains terms sufficiently comprehensive to include acts of God, but disclaimed any attempt to formulate a rule to include every injury within the meaning of that phrase, and announced adherence to the general rule on that subject, which is to the effect that in order that his injury can be said to arise out of his employment, a workman must have been exposed by his employment to more than the normal risk to which the people of the community generally are subject. The decision apparently turned upon a finding of the district court to the following effect: "In this case we are of the opinion that we are justified in taking judicial notice of the principle of the lightning rod, the natural attractiveness of metal, and especially of steel, for lightning, and we hold that under the facts in this case the deceased was exposed by reason of his employment about an iron and steel road grader to unusual hazard from lightning; that such employment increased the natural hazard from lightning to which all living creatures are exposed." The court finally said in connection with this finding: "The most diligent research on our part has failed to disclose any authority which supports the theory upon which this cause was decided by the court below; on the contrary, so far as they point to any conclusion respecting the subject, the authorities indicate quite clearly that the

presence of the metal road grader could not have had any perceptible influence upon the lightning, and did not tend to increase the natural hazard of the deceased's employment. For this reason it cannot be said from this record that his death resulted from an accident arising out of his employment, as the term is used in our Workmen's Compensation Act.''

In the *Herberson Case* the court declared that the evidence did show a causal connection between the injury sustained and the duties imposed upon the employee. In the course of the opinion, however, attention was called to the fact that in the application of the law each case must be decided upon its own fact features. The criticism of the *Wiggins Case,* as contained in the Herberson opinion, was in reality a warning against taking the general statement therein made as embodying an arbitrary and inflexible rule for the government of all such cases, or perhaps a warning that the case might not be followed in future decisions.

Courts have not been able to decide cases in accordance with any general rule, because no such rule can be made or promulgated. In the case of *Netherton* v. *Lightning Delivery Co.,* 32 Ariz. 350, 258 Pac. 306, 308, an Arizona case involving death by lightning, this matter was very properly stressed. There the court called attention to a list of cases wherein awards of compensation had been allowed, and to another list wherein compensation had been denied. In the latter list the *Wiggins Case* was mentioned. The court, however, there quoted liberally from *In re McNicol,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, and finally, after a review of cases, announced its own conclusions employing the following forceful and pertinent language: ''The facts in each of these cases are different and it would be of little value to state them, but running through all of them we find the general principle of law which should apply in substantial agreement. It may be briefly stated thus: When the workman *by reason of his employment* is more exposed to injury by lightning than are others in the same locality and not so engaged, the injury may be said to arise out of the employment; when,

however, it appears that nothing in the nature of the employment has exposed him to any more danger than that shared in common by the general community, the injury does not arise out of the employment and is not compensable. To use an extreme illustration, it is a notorious fact that lightning is more apt to strike a very high structure standing out above its fellows than the surface of the ground. If a workman were engaged in repairing the summit of the Washington Monument or the Eiffel Tower during a thunderstorm, and were injured by lightning while so doing, it would very properly be said that the risk in such employment of injury by lightning was greater than that of the ordinary person in the cities of Washington and Paris. If, on the other hand, the ordinary clerk or messenger going about his master's business on the street were suddenly struck while in the midst of a crowd, it could not be said that his occupation increased his risk of being so struck over that of the ordinary pedestrian. Each case must therefore be considered on its own facts. But the standard for testing those facts is always the same, to wit, *Did the employment increase the danger?"*

Here, we think, it is fairly inferable that Sullivan's employment did increase the danger. The record, in our opinion, amply supports the finding of the trial court to the effect that the metal pipe in the hands of deceased, and the projections, trees, poles and wire fences made the deceased's risk and danger of being killed by lightning greater at the point in the cemetery than elsewhere in the vicinity. The evidence discloses the fact that the body of the deceased was badly burned, and that his fellow workman only a few feet away was not burned at all although knocked down by what was described as "concussion." It must be apparent, then, that the theory that the current, or bolt, did strike the iron pipe and pass through it to the damp ground, with the resultant disastrous effects to the workman in contact with the pipe, was not unreasonable or without foundation in the evidence.

The decision in the *Herberson Case* was predicated upon the mandate of the Compensation Act (sec. 2964, Rev. Codes),

requiring liberal construction of the Act. We would not say that the court at that time believed, or now believes, that the language of the Wiggins opinion may be fairly interpreted as meaning that a bar was erected by the court sufficient to prevent recovery in lightning cases generally. In any event, we specifically declare that such is not the true rule.

This court does not now announce a rule such as the Chief Justice of the Colorado supreme court criticized in his special concurring opinion in the case of *Aetna Life Ins. Co.* v. *Industrial Commission of Colorado*, 81 Colo. 233, 254 Pac. 995, 996, wherein he said: "An affirmance of this judgment establishes the rule that when one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one 'arising out of' the employment of the person so injured." We ask, as did the court in the Arizona case: "Did the employment increase the danger?"

In consonance with the trend of judicial opinions in the more recent cases decided by courts generally, this court has endeavored to construe the Workmen's Compensation Act with strict regard for the mandate requiring liberal construction as imposed by the Compensation Act itself. Such endeavor actuated the court in the very pertinent decision in the case of *Ryan* v. *Industrial Accident Board*, 100 Mont. 143, 45 Pac. (2d) 775, and also in the case of *Birdwell* v. *Three Forks Cement Co.*, supra, and numerous other recent cases decided by this court. In considering these matters, however, we must always have in mind that this court has heretofore stressed the fact that our Compensation Act does not contemplate that an employer who comes within the provisions of the Act shall be the insurer of his employee at all times during the period of employment (*Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 227 Pac. 615); that the Act is not founded on the theory of life insurance (*Kerns* v. *Anaconda C. Min. Co.*, 87 Mont. 546, 289 Pac. 563), and that it is not a social in-

surance law. (*Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973.)

The judgment should be, and it is, affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, did not hear the argument and takes no part in the foregoing decision.