# JOSEPH KENNEDY v. THOMPSON LUMBER COMPANY AND ANOTHER.[1]

February 28, 1947.

No. 34,236.

*Robins, Davis & Lyons* and *Stanley B. Korengold,* for relator.

*R. G. Shepley,* for respondents.

[1]Reported in 26 N. W. (2d) 459.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission denying the claim of Joseph Kennedy for compensation under the workmen's compensation act.

On March 9, 1945, and prior thereto, Kennedy was employed as a ripsaw operator in the box factory at the Calhoun yards of the Thompson Lumber Company in Minneapolis. He was a member of Cabinetmakers' and Millmen's Union, Local 1865, and had been selected by his fellow workers in the union to act as "shop steward." In that capacity, he was charged with the duty of negotiating grievances arising between the employes and the employer. During the period immediately preceding March 9, unsuccessful efforts had been made to settle a dispute between the employes in the box factory and the management, and on that date the situation was such that in the opinion of Kennedy and others a work stoppage or strike was imminent. Kennedy was injured during the morning of March 9. His petition, directed to the industrial commission, was based on the claim that he was injured while attempting to avert this work stoppage and that the injury was therefore one arising out of and in the course of his employment.

The matter was heard before a referee, who found that "petitioner suffered an accidental injury to his left leg, but that said accident did not arise out of or during the course of said employment." Although the commission affirmed the findings and conclusions of the referee, it did, upon petition for rehearing, modify the above finding, which in its entirety reads as follows:

"That on said date said petitioner suffered an accidental injury to his leg; that at the time of said accidental injury the employe, acting in his capacity as shop steward of the employes' union, was crossing a public street for the purpose of reaching a telephone located on property not owned or controlled by the employer, for the purpose of telephoning to the business agent of the union; that said accident or injury did not arise out of or during the course of the employment of the employe by the employer, Thompson Lumber Company."

Pursuant to an agreement between the parties, the testimony was

confined to the question of liability, and the taking of medical testimony was deferred.

In reviewing the decision of the industrial commission, we have these issues for determination:

(1)   Does the amended finding of fact sustain the conclusion that the injury was not compensable?

(2)   Does the record contain evidence of such a nature as to require this court to direct findings favorable to the employe?

A decision should contain a sufficient statement of the facts to form a basis for the conclusions of law. 6 Dunnell, Dig. & Supp. § 9848. The question here is whether it can be said that the employe is barred from recovery because at the time of his injury he was "acting in his capacity as shop steward of the employes' union, was crossing a public street for the purpose of reaching a telephone located on property not owned or controlled by the employer, for the purpose of telephoning to the business agent of the union."

The mere fact that at the time of the injury the employe was crossing a public street does not bar him from the benefits of the act. Although Minn. St. 1945, § 176.01, subd. 11,[2] provides that workmen are not covered "except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen," the limitation has been liberally construed. This court is committed to the doctrine that an injury from a so-called street risk in the course of employment, *i. e.*, when the employe is on his job or at his work, is one arising out of his employment. Hansen v. Northwestern Fuel Co. 144 Minn. 105, 174 N. W. 726; Johnston v. W. S. Nott Co. 183 Minn. 309, 236 N. W. 466. In the Hansen case, this court said (144 Minn. 107, 174 N. W. 727):

"The court was right in holding, as a matter of law, that the injury to the plaintiff arose out of his employment. It was a street risk to which his work subjected him. This should be understood to be

---

[2]See, M. S. A. § 176.01, subd. 11, and cf. Mason St. 1927, § 4326(j).

settled law in this state as it is generally in other states. Mahowald v. Thompson-Starrett Co. 134 Minn. 113, 158 N. W. 913, 159 N. W. 565, and cases cited."

And in the Johnston case, this court stated (183 Minn. 313, 236 N. W. 468) :

"* * * Injuries resulting from slipping on streets while in the course of the employment are taken by the courts generally as arising out of the employment the same as a street accident through contact with traffic or other cause."

In Le Bar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N. W. (2d) 729, there was an award to the employe for an injury sustained while playing softball on the Parade Ground, a public park in the city of Minneapolis, although, strictly speaking, the place of his employment was the dairy operated by his employer. In Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4, there was an award to the employe's widow where the employe, after his return from a labor union meeting which he had attended in his capacity as a labor union organizer, was found dead from a gunshot wound 80 feet from the garage of his home. In Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 9 N. W. (2d) 237, the accident for which compensation was awarded occurred while the employe was returning from a visit with friends which was incidental to a trip on behalf of her employer. All these cases indicate that where the accident arises out of and in the course of the employment this court will not insist that the employe establish as a condition precedent to recovery that the accident occurred on premises controlled by the employer.

Whether the accident here involved is compensable depends on facts which do not appear in the findings of the industrial commission. If at the time of the injury the employe was about to make a telephone call which would have advanced the interests of his employer in its relations with its employes, the case might be covered by the act. In fact, this was admitted by counsel for the employer in his oral argument when he said in effect that if the employe left

the employer's premises for the purpose of telephoning the business agent of the union to avert a possible work stoppage and if the accident occurred during the course of this act the injury would be compensable. Thus, the finding is incomplete, in that it fails to show the purpose for which the telephone call was to have been made. Because of this omission, we conclude that the amended findings of fact do not sustain the conclusion that the injury was not compensable.

Since the findings of fact are incomplete, we have considered the advisability of referring the matter to the industrial commission for further findings. It is the general rule that the province of the supreme court is to determine questions of law and not to make findings of fact. Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981; Klein v. McCleary, 154 Minn. 498, 192 N. W. 106; State ex rel. Lescault v. Industrial Comm. 155 Minn. 150, 193 N. W. 34. However, it has been held that in compensation cases, where the evidence leads to only one conclusion and it is considered that the parties ought not to be put to the expense and delay of another trial, the cause may be remanded with directions to make findings in accordance with the undisputed evidence and to enter a conclusion upon the findings consistent with the opinion of this court. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636. It is in an effort to ascertain the significance of the undisputed testimony that we review in some detail the evidence appearing in the record.

The employe testified that for some time prior to March 8, 1945, a controversy existed between the employer and the employes of the box factory. Unsuccessful efforts were made to negotiate a settlement of the issues in controversy. According to his testimony, the men decided on March 8 that they would walk out on the following day unless "we could have some definite answer as to what the company intended to do in regard to our grievance." On March 8, the employe, while acting in his capacity of shop steward, advised a Mr. Hickson, manager of the box department, "that the men were very dissatisfied and if they didn't get action they would stop work." Mr. Hickson notified Frank T. Phillips, treasurer of the company, who

was in charge of labor relations, of this situation. That afternoon, Phillips, a Mr. Charles Roth, and Kennedy discussed the matter. Kennedy claims that he told Phillips that the workers had decided to walk out unless they could get some satisfaction from him as to a settlement of their grievance. He said that Phillips agreed to the five-cent raise, "or whatever the sash and door industry was allowed by the War Labor Board." Phillips admitted that "There was a discussion regarding raise in wages," but claimed that "There was no mention made of a stoppage of work at that time." Following this meeting, Kennedy reported to the men that if they would continue to work he was quite sure an agreement would be reached inasmuch as Phillips had "showed some desire of actually paying five cents raise and clearing it up." This report did not satisfy the men, because they wanted something in writing, so Kennedy decided to get in touch with the business agent of the union, Gustave B. Johnson, for the purpose of requesting him to obtain a signed agreement from the employer on this matter of a raise in pay. On the morning of March 9, Kennedy informed the men that he had contacted the union business agent the evening before. However, the men threatened that if the agreement was not signed immediately "we are not so darned sure we are going to continue to work after today or even this afternoon if we don't get that this forenoon; we want it this forenoon, that is the dead line; we want it now or not at all." Shortly after this meeting with the men, Kennedy left his employer's premises during the rest period about 9:30 that morning and crossed the street to the Standard Oil station to telephone the business agent of the union. Before he reached the telephone he fell and was injured. He testified that the purpose of this call was to urge the business agent "to get this agreement signed so that we wouldn't have to have any labor difficulty as far as stoppage of work was concerned." He also testified that just before crossing the street that morning he told Roth, the foreman of the box factory, that he was going to call the union's business agent "and find out what is going on, * * * otherwise, if we can't get some agreement made today, * * * these fellows are going to quit." There is no evidence contradicting Kennedy's state-

ments as to the purpose of his call, and Roth was not called as a witness for the employer. There is testimony on behalf of the employer that the reason for Kennedy's trip that morning was to purchase cigarettes, but inasmuch as the industrial commission rejected this claim in its amended findings we are not considering it on this appeal. There can be no doubt from the record that some kind of labor trouble was brewing in the box factory at employer's yards on and prior to March 9. Herbert Curtis, another employe in the box factory, corroborated Kennedy's testimony that there was a labor dispute immediately preceding March 9 between the employer and the men working in the same group as he and Kennedy. He said that this dispute almost terminated in a work stoppage around that date and that the men in this group had set March 9 as the date for a work stoppage. There is no testimony in the record which directly contradicts this corroborated testimony of the employe that a work stoppage was imminent on March 9 when he went to make the telephone call to the business agent. The employer contends that telephones were available at its yards for the use of employees and that Kennedy could have used one of these to make the call to the business agent on the day he was injured. Kennedy testified that he had had some previous difficulties with employer's foreman about the use of the telephone on employer's premises regarding labor difficulties. While Arthur Johnson, manager of employer's Calhoun yards, denied that the employes were ever refused permission to use the telephone on the premises, it remains undisputed that Kennedy thought him to be hostile. Under the circumstances, it is altogether reasonable that he did not want to disclose to Johnson the object of his telephone call, and for that reason thought it best to go to a telephone not located on the employer's premises.

Phillips admitted that as a representative of the company he was greatly interested in having a continuous flow of production and in avoiding a work stoppage at the Calhoun yards. He conceded that if Kennedy was trying to prevent a work stoppage at the yards it would be to his (Phillips') interest as a representative of the company. He said that he was familiar with the fact that Kennedy was

the shop steward and handled grievances. He acknowledged that he and Kennedy frequently discussed these situations and that he "looked to him [Kennedy] to do all in his power to pacify the men, keep things running smoothly." He testified that Kennedy coöperated with him as a shop steward, that he always appeared to be working to keep production going, and that he was satisfied with the type of work Kennedy did as a shop steward.

It is our opinion that in this case the record shows that on and prior to March 9 a labor dispute existed at the employer's yards; that the employe, while acting as a shop steward, was working with the employer's labor relations representative in connection with the dispute; that a work stoppage among some of the men in employer's yards was possible, if not imminent; and that it was to the interests of both the employer and the employes that such work stoppage be averted. Along with this factual background, we have the testimony of Kennedy that at the time of the injury he was going to call his business agent to try and avert a work stoppage. We have some corroboration of this testimony and nothing in direct conflict with it. From the evidence adduced, it appears that the logical reason that Kennedy had for making the call was to try and avert a work stoppage. In view of the fact that this court has frequently held that a liberal construction must be given the compensation act for the benefit of the employe, we feel justified in concluding that at the time of the injury the employe was about to make a telephone call to the business agent of the union for the purpose of averting a work stoppage, and that in so doing he was acting jointly for the benefit of employer and employes. We find that when Kennedy was hurt he was acting in the interests of the employer as well as the employes and that the injuries he sustained arose out of and in the course of his employment. We recognize that a shop steward is primarily a representative of the union. We do not intend to establish any precedent which will be used in support of the claim that all injuries suffered by shop stewards while acting as such are compensable. Our decision is limited to the facts in the case now before us.

The cause is therefore remanded to the industrial commission, which will make findings and enter a conclusion thereon consistent with the opinion of this court.

Employe is allowed $250 as attorneys' fees.

Reversed.

MR. CHIEF JUSTICE LORING took no part in the consideration or decision of this case.