PARTOLL, Appellant, *v*. ANACONDA COPPER MINING
CO., Respondent.

No. 8835

Submitted January 11, 1949.   Decided March 8, 1949.

203 Pac. (2d) 974

(305)

Mr. Myles J. Thomas and Mr. John W. Bonner, both of Helena, for appellant. Mr. Thomas argued the cause orally.

Messrs. Murphy, Garlington & Pauly, of Missoula, for respondent. Mr. Pauly argued the cause orally.

THE HONORABLE W. R. FLACHSENHAR, District Judge (sitting in place of Mr. Chief Justice Adair, disqualified):

This case is before this court on appeal from the district court where judgment was rendered affirming orders of the Industrial Accident Board denying compensation to claimant, Albert J. Partoll.

Appellant, an employee of respondent operating under Plan I of the Montana law, filed a claim for compensation for injuries sustained through an automobile accident while he was on his way home from his work as night time-keeper at respondent's mill at Bonner, Montana, on Saturday about 2:30 a. m., July 29, 1944. He had completed his shift and started in his car for his home in Missoula, a distance of about seven miles, when he collided with another car on the public highway about half way home.

The controlling point involved is whether appellant sustained injuries arising out of and in the course of his employment and this in turn depends upon whether he had been given a letter to mail for respondent at Missoula. The only question for us to

decide is whether the evidence is sufficient to sustain the findings and judgment that the claim is not compensable.

The Board held two hearings, one on October 17, 1945, and the other on September 18, 1946. At the first hearing, Partoll testified in detail as to his work, the accident and negligence of the driver of the other car. He testified he was free to choose his own route and means of transportation to and from work, and had been commuting daily for several months in his own car on his own time and at his own expense.

At the first hearing his testimony in addition to the above is as follows:

Direct examination:

"Q. And immediately after you terminated your day's work, that is at 2:15? A. Yes, approximately.

"Q. What did you proceed to do? A. I left the office after seeing that everything was locked up and I proceeded to my car, which is parked nearby and started on my way home.

"Q. Did any other work interfere with your finishing the day's task at the mill and coming home? A. No other task. I had finished my work for the day after locking the vault in the evening."

Cross examination:

"Q. And upon the occasion of the accident you did leave prior to 3 o'clock? A. Because my eight hours were in sir. I did leave, I left at 2:15, my eight hours had been completed.

"Q. And your duties had been performed? A. They had been performed.

"Q. So that you had no more work that day. That is right. That was not a pay day and you were not required in the performance of your duties to remain until three or even earlier? A. That is right.

"Q. I think you testified that you put away your material, whatever it was, in the vault and left the office for the purpose of returning home for your rest? A. Yes."

At that hearing there was no evidence regarding any letter to be mailed by claimant.

At the second hearing appellant's Exhibit A and Exhibit B were introduced. Exhibit A was a specimen time card for the week of July 24 to 30, 1944, on the face of which Partoll had noted the number of hours he had worked on the 24th, 25th and 26th of that week, and on the back of the card he had made the following notation: "Shift 28th—way home—mail letter for Co. —to Butte—at Missoula—Good."

Exhibit B was a brief case in which he carried supplies in his car. Exhibit A was found by claimant, in his car in February of .1946, and Exhibit B was found in the car on further search about ten days later. No letter however was found. Partoll did not have any independent recollection of Good handing him the letter or of his having it with him or putting it in his brief case, but he inferred that he had the letter because of the memorandum on the back of Exhibit A.

At the second hearing we find the following evidence.

Direct examination:

"Q. I want to ask you, Mr. Partoll, about these letters that you would mail for Mr. Lubrecht and Mr. Good. What was your custom and how would that come about? A. I would be working and they would hand me a letter in person and say, 'Would you mail this in Missoula?', and I would say 'Yes,' and I would mail it.

"Q. What time would the post office close at Bonner? A. Generally six o'clock, and then the mail was taken down after to the depot by the morning train which left Missoula some time around seven o'clock.

"Q. Was this a daily occurrence and would it happen at some specific time that you would be asked to mail letters? A. Generally toward the end of the month, finish of business for the month I presume.

"Q. Do you know whether or not on the night of July 28, 1944, or the morning of July 29, 1944, you had been asked to mail a letter? A. I don't recall distinctly on that, but whenever I had a letter to mail I made a notation thereof so in case

the letter was lost I would know whether I had been the man who mailed it.

"Q. You made a notation on something? A. On the back of my time card which I kept up daily.

"Q. I show you claimant's Exhibit 'A' and I will ask you what that is? A. That is one of the time cards I filled out.

"Q. Now, Mr. Partoll, do you have any independent recollection of having made that notation on the back of the card, Claimant's Exhibit 'A,' on the night of July 28th? A. It was my customary practice to do that. If I received a letter from Mr. Good, I put mail letter, and following put the name so if a question arose about mailing a letter, I would know I was the one to mail it.

"Q. In other words, it was part of your duties, in addition to the regular shift you put in, to mail letters in Missoula? A. Yes."

He also testified that he had been asked to mail letters at times by Mr. Root. Mr. Lubrecht, general manager for 20 years, and Mr. Root, assistant manager for 24 years, each denied positively in their testimony ever giving him any letters to mail, that their mail was taken to the post office at Bonner before it closed at six p. m. Mr. Good, cashier of respondent at Bonner for 30 years, and immediate superior of claimant, said while he might have given him letters on occasion to mail, he had no recollection of so doing on the night before the accident. He saw claimant at the hospital a day or so after the accident, and while they discussed the accident and claimant's employment, nothing was said about any letter he had given claimant to mail. Good also testified that there was no mail lost or unanswered about that time, that mailing letters was not a part of Partoll's duties of employment, and he could have refused to mail such a letter.

The Board made its findings and concluded that the accident resulting in injuries to Partoll did not arise out of his employment. Appeal was then taken to the district court, and at the trial there was submitted the full record of the proceedings and

evidence before the two hearings before the Board, together with additional testimony of appellant and two other witnesses.

The learned district judge rendered his opinion, made findings and entered judgment upholding the decision of the Board, deciding that appellant was not engaged in any mission for respondent at the time of the accident, and that he did not receive injuries out of and in the course of his employment.

Under our section 2947, R. C. M. 1935, the Industrial Accident Board is vested with full power, authority, and jurisdiction to try and finally determine all matters respecting compensation subject only to review as provided by the Act.

The four specifications of error relate to the trial court's inferences and findings from the evidence. In Murphy v. Industrial Acc. Bd., 93 Mont. 1, on page 6, 16 Pac. (2d) 705, 706, this court speaking through Mr. Justice Angstman, said: "And where the court has received additional evidence not presented to the board, every presumption is in favor of the correctness of the court's decision. Mulholland v. Butte & Superior Min. Co., 87 Mont. 561, 289 Pac. 574. And this court will not reverse the judgment of the district court unless the evidence clearly preponderates against it. Kerns v. Anaconda Copper Min. Co., 87 Mont. 546, 289 Pac. 563. In weighing the evidence we bear in mind the rule, oft repeated, that the district judge who sees and hears the witnesses is in a better position than we, and hence if there is substantial evidence in the record supporting the judgment, we will not disturb it."

The law is well established that unless claimant received injuries arising out of and in the course of his employment, there can be no recovery of compensation under the Workmen's Compensation Act. Sec. 2911, R. C. M. 1935; Griffin v. Industrial Acc. Fund, 111 Mont. 110, 106 Pac. (2d) 346; Sullivan v. Roman Catholic Bishop of Helena, 103 Mont. 117, 61 Pac. (2d) 838; Doty v. Industrial Acc. Fund, 102 Mont. 511, 59 Pac. (2d) 783; 58 Am. Jur., "Workmen's Compensation," sec. 217, p. 723.

No exact formula can be laid down which will automatically solve every case involving the question whether an accident arises

out of and in the course of the employment, but each case must depend upon its particular facts and circumstances. Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; Bountiful Brick Co. v. Giles, 276 U. S. 154, 48 S. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402; Voehl v. Industrial Ins. Co., 288 U. S. 162, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245; Herberson v. Great Falls Wood & Coal Co., 83 Mont. 527, 273 Pac. 294; 58 Am. Jur., "Workmen's Compensation," sec. 210, p. 717.

Where the decisions of the Board and court involve the consideration of conflicting evidence as to essential facts or the deduction of permissible but diverse inferences therefrom, their solutions of such conflict are presumed to be correct, and the burden of proof is upon the party attacking them to show that they were erroneous. Kerns v. Anaconda Copper Min. Co., 87 Mont. 546, 289 Pac. 563; Mulholland v. Butte & Superior Min. Co., 87 Mont. 561, 289 Pac. 574; Woin v. Anaconda Copper Min. Co., 99 Mont. 163, 43 Pac. (2d) 663; Jenks v. Carey, 136 Cal. App. 80, 28 Pac. (2d) 91; Woolworth Co. v. Industrial Acc. Com., 17 Cal. (2d) 634, 111 Pac. (2d) 313.

There is ample evidence to sustain the findings of the trial court, and we must therefore hold that the judgment is supported by the evidence. Landeen v. Toole County Refining Co., 85 Mont. 41, 277 Pac. 615; Vesel v. Jardine Min. Co., 110 Mont. 82, 100 Pac. (2d) 75, 127 A. L. R. 1093; American Digest, Workmen's Compensation, Key No. 1939; Hirst v. Chevrolet M. D. Corp., 110 Ind. App. 22, 33 N. E. (2d) 773, 37 N. E. (2d) 3; Mandell's Case, 1948, 322 Mass. 328, 77 N. E. (2d) 308, citing Eyman v. Industrial Com. of Ohio, 58 Ohio App. 287, 16 N. E. (2d) 502; Anderson v. Amalgamated Sugar Co., 98 Mont. 23, 37 Pac. (2d) 552.

The judgment is affirmed.

Associate Justices Freebourn, Angstman and Metcalf, and The Honorable R. M. Hattersley, District Judge (sitting in place of Mr. Justice Bottomly, disqualified), concur.