CLEM MORGAN, PLAINTIFF AND APPELLANT, *v. INDUS-*
TRIAL ACCIDENT BOARD, CONYES CONSTRUCTION
CO., and FIREMAN'S FUND INDEMNITY CO., DE-
FENDANTS AND RESPONDENTS.

No. 9811.
Submitted Sept. 12, 1957. Decided Jan. 15, 1958.
Rehearing Denied Feb. 4, 1958.
321 Pac. (2d) 232.

Joseph P. Hennessey, Andrew G. Sutton, Billings, M. J.

Doepker, Butte, Joseph P. Hennessey, argued orally, for appellant.

Coleman, Crowley & Lamey, Billings, Cole Crowley, argued orally, for respondents.

MR. JUSTICE CASTLES:

This is a workmen's compensation claim, rejected by the Industrial Accident Board and denied on appeal by the district court. Claimant has again appealed. No question is raised as to the regularity of the official proceedings. Partial permanent disability is unquestioned.

Both the Board and the trial court found on the record that the injuries were sustained outside the scope of claimant's employment.

Plan Two coverage is involved. The insurer is the defendant Fireman's Fund Indemnity Company. The Board is first party defendant. Claimant's union employer is not a party, nor is any union dispute involved.

The facts are not complicated. Claimant, by occupation a high speed welder, was employed by defendant, Conyes Construction Company with a crew laying a cross-country natural gas transmission pipe line. At the time, they were working in the vicinity of Forsyth, Montana. Some crew members lived in Miles City, others at Forsyth. They drove to and from the job and they moved from community to community as the work progressed. Claimant and his wife had temporary living quarters in Miles City. They resided in Tulsa, Oklahoma.

Claimant had recently been nominated by his fellow union crew members and designated by the union's eastern Montana business agent as job steward. The evening of June 7, 1950, after working hours, while driving from his living quarters in Miles City to attend a union business meeting in Forsyth and there deliver to the union's business agent dues claimant had collected, along with applications for union membership procured by claimant as job steward from helpers who had been brought in to hasten the work, claimant ran off the road and

broke his neck. He was injured about 6:30 p. m. The meeting was called for 7:30 p. m.

Claimant and other welders worked a daily shift from 7:00 a. m. to approximately 5:30 p. m. They were paid a total wage of $226.72 weekly, when employed full time. Under agreement between their union and the defendant pipe line company, and to hold such specialized workmen available through periods when weather prevented construction, they were paid $10 daily during bad weather to stand by. On such days they had no other pay or duties.

Claimant testified, almost six years after the accident occurred, that on the day he was injured he worked at the job from 7:00 a. m. until a rainstorm stopped work about 2:00 p. m. This is contradicted by affidavit of the office manager for Conyes Construction Company, made an equally long time after the accident occurred, but affirming *on the company's time records* that the welding crew was not sent out to the job at any time on the day claimant was injured, and that on this day, because of inclement weather, claimant was on standby pay only. Whichever was the case, the accident happened after claimant's working hours and away from the job.

The wage agreement between the union and the construction company is not shown in the record. At a first hearing on the claim, occurring some fourteen months after the accident, the union's business agent identified himself as representing the Plumbers and Steamfitters Local No. 30 of the United States Association of Journeymen and Apprentices of the Plumbing and Piping Industry of the United States and Canada. Claimant later testified that he himself was a member of the ''Pipe Line Local out of Tulsa, Oklahoma.'' The business agent testified that his territory included all of eastern Montana and that he ''presumed'' claimant had been a job steward at the date of the accident. But he added, ''As I keep no records of the exact duties or anything referring to the job stewards, it is pretty hard for me to say.'' However, it is undisputed that at

the time claimant was injured, he was a designated union job steward under this business agent.

The business agent explained:

"The duties of our job steward is to keep the local union informed of the different journeymen coming in on the job. They make a report to me usually once a month as to the names of the journeymen, their card numbers, and whether they are in good standing with the different unions. * * *

"The shop steward receives his orders from the business agent, and his duties are to keep the local union informed of the conditions on the job and all new members reporting for work. He takes care of the dues and the clearance cards also."

He further testified:

"Q. The job steward, however, represents the union on a particular job, is that correct? A. That's right.

"Q. And in these matters in which the job steward exercises his own judgment and discretion, he is representing the union local on the job, was that the situation? A. He represents the journeymen and the local union."

The record indicates that claimant's designation as job steward came about in the following manner. He testified as follows:

"Q. Now, as to a job steward, tell us how a job steward is appointed? A. Well, the men picked me, the welder foreman and all the rest of the welders that belonged to the Union, the pipe foreman, they all picked me; well, I couldn't hardly refuse so this business agent, he approved of it, and I was representing the men on that job."

Nothing in the record indicates that the defendant pipe line construction company did not acquiesce in this designation, and it is agreed claimant's pay would not have been docked by the amount of time he spent in such union activity during working hours.

Of his responsibilities as union job steward, claimant testified that he represented the individual employees, and testi-

fied that a union job steward "is supposed to take care of the men and all situations that come up, of course, you know, if someone gets in a little beef about something, why there is supposed to be a man there representing the Union, and also the men that he is working with, to kind of get this straightened out." On being asked "if the company were to be dissatisfied, who would they complain to?", he replied, "To me."

Apparently the defendant construction company had to accept whoever the union designated as job steward, for the claimant testified:

"Q. The business agent was the one that put the job steward on the job? A. Yes, and he can pull him off.

"Q. And he was the only one that can pull him off? A. Yes."

The claimant's testimony states that all of the twelve or fourteen man crew were qualified for union membership but that "three or four" did not have union "clearance cards." These apparently were the membership applications claimant had procured as job steward and was taking to turn over to the union's business agent.

To relate his injuries to the scope of his employment, claimant swore that the union welders would have refused to work on the pipe line if the new helpers had not applied for union membership. So, by securing their applications for union membership, a day or two before the evening he was injured during his trip to carry these applications to the union's business agent, claimant had removed the possibility of this threat of a strike by the union welders and thereby had served the interest of the defendant construction company. These inferences and this conclusion, however, are not supported by the testimony of the union's local business agent, taken earlier, and the transcript contains nothing other than claimant's statements implying any immediate possibility of a strike threat. In fact, it would appear that if there had been any such prospect it had disappeared with the procuring of the membership applications a

259

day or so before from the three or four crew members who did not up till then have current union clearance cards.

Claimant himself testified: ''Q. There was no grievance between the construction company and the union, that was up for hearing that night [at the union meeting]? A. No there wasn't any grievance, only thing we just wanted them members, wanted them new men to have cards, they had to have them.

''Q. That is you and * * * [the business agent] * * * were interested in that? A. Yes sir.''

On this testimony the Industrial Accident Board ruled that ■ the ''accidental injury to the claimant * * * did not arise out of nor was it in the course of his employment by Conyes Construction Company.'' The district court sustained this ruling in identical words, upon findings and conclusions made on the record certified by the Industrial Accident Board. We therefore must sustain that ruling unless that record clearly preponderates against it. Landeen v. Toole County Refining Co., 85 Mont. 41, 277 Pac. 615.

It is elementary that a compensable injury must arise out ■ of and within the scope of employment by the employer concerned, Herberson v. Great Falls Coal & Wood Co., 83 Mont. 527, 273 Pac. 294, and that at all times the right to recieve compensation must depend on the particular facts and circumstances of the particular case. Partoll v. Anaconda Copper Min. Co., 122 Mont. 305, 203 Pac. (2d) 974. But particulars are subordinate to principle.

It is undisputable that claimant was injured while traveling on union business. To what extent was this particular union business the business of the pipe line construction company, the employer concerned with the claim? On the whole record, and with no strike imminent, it comes only to this: that employers and employees alike desire industrial peace.

No strike was impending. No grievance was to be discussed. ■ By the claimant's own testimony all employees on the job were qualified for union membership and the new men had

applied for union clearance cards through claimant as job steward. Their issuance would be routine. Nothing in the record in any way indicates that the claimant's absence from the union meeting, his inability to return to his duties as job steward, nor the delay his injuries caused in delivering the applications, in any way prejudiced the defendant construction company's interests, or, for that matter, the union's. Undoubtedly claimant's injuries were severe and his disability is permanent. But even granting the possibilities of a strike, which we do not necessarily assume would be controlling in our decision, and remote as that possibility appears to have been, the possibility had passed. For all practical purposes, causation had ceased. Landeen v. Toole County Refining Co., supra. For the time being, claimant's concern was not with pipe line construction but with maintenance of union membership. As this court said in Griffin v. Industrial Accident Fund, 111 Mont. 110, 117, 106 Pac. (2d) 346, 348, ''To hold that claimant is entitled to compensation here we would be obliged to say that the employer was an insurer against accident for the full twenty-four hours of a day, no matter what the employee may have been doing during the sixteen hours when his regular services were at an end.''

Under the particular circumstances, where the accident occurred is irrelevant. If claimant was injured within the scope of his employment, the fact that he was injured ''after hours'' and ''off premises'' is incidental. Even in ''street risks,'' the *scope*, not the place of employment controls. Murray Hospital v. Angrove, 92 Mont. 101, 10 Pac. (2d) 577.

Counsel for the claimant urge the Minnesota court's ruling in Kennedy v. Thompson Lumber Co., 223 Minn. 277, 284, 26 N. W. (2d) 459, 463. Claimant's citation rules for liability on a finding of fact by the Minnesota Supreme Court that ''a labor dispute existed at the employer's yards; that the employe, while acting as shop steward, was working with the employer's labor relations representative in connection with the dispute; that a

work stoppage among some of the men in employer's yards was possible, if not imminent; and that it was to the interests of both the employer and the employes that such work stoppage be averted," all these factors being present before the injury was sustained off the premises.

In opposition, counsel for the employer and its insurer cite Tegels v. Kaiser-Frazer Corp., 329 Mich. 84, 44 N. W. (2d) 880, which rejects the Kennedy case. Defendant's citation rules against liability to a claimant injured while participating in the routine election of a shop steward on the premises. The Michigan court said in 329 Mich. at page 90, 44 N. W. (2d) at page 884:

"In our opinion the case of Kennedy v. Thompson Lumber Co., supra, is not controlling. In that case plaintiff was injured while actively engaged in rendering a service to his employer. In the case at bar plaintiff was not actively engaged in rendering a service to his employer at the time of his injury. He was exercising a privilege common to all members of the union in the selection of a steward. It cannot be said that his injury arose out of and in the course of his employment."

Our opinion would gain but little from further detailed review of citations, whether by one side or the other, or from a multiplicity of additional opinions we have also examined. For extended discussion see the dissenting opinion in Salmon v. Bagley Laundry Co., 344 Mich. 471, 74 N. W. (2d) 1: coffee break injury; on premises; denied on ground employer lacked right to control, and both the ruling opinion and the lengthy dissent in Mack v. Reo Motors, Inc., 345 Mich. 268, 76 N. W. (2d) 35: noon intermission injury; on premises; denied for lack of causal connection. These cases and others examined are but the pros and the cons of particulars.

What is the underlying principle? In cases where some reasonably immediate service to the employer can be discerned the claim has been sustained. Where there has been no reasonably immediate service, the claim has been denied. Such im-

presses us as a fundamental rule and guide for the liberality to which this court is necessarily and properly committed and for which claimant's counsel so earnestly contend. See R.C.M. 1947, sec. 92-838; Sullivan v. Roman Catholic Bishop, 103 Mont. 117, 61 Pac. (2d) 838; Yurkovich v. Industrial Accident Board, 132 Mont. 77, 314 Pac. (2d) 866, citing Tabor v. Industrial Acc. Fund, 126 Mont. 240, 247 Pac. (2d) 472, and other cases. Beyond this each decision must be controlled by the particular facts and circumstances of the particular case. Partoll v. Anaconda Copper Min. Co., supra. Our opinion proceeds upon that premise.

The record supports the order of the Industrial Accident Board denying the claim. Here we discern no such employee service to the defendant construction company as in good conscience should raise a corresponding employer obligation to the claimant. But while we find no evidence preponderating against the Board's findings, we "do not intend to establish any precedent * * * Our decision is limited to the facts in the case now before us." Kennedy v. Thompson Lumber Co., supra.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I dissent. I also reserve the right to file a written dissenting opinion herein.