## KIRKLEY v. GENERAL BAKING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—FINDINGS OF INDUSTRIAL ACCIDENT BOARD CONCLUSIVE IF SUPPORTED BY EVIDENCE IN ABSENCE OF FRAUD.

   While, in proceedings under the workmen's compensation act, the findings of fact by the industrial accident board, in the absence of fraud, are conclusive under section 12, pt. 3, of the act, the Supreme Court, on certiorari, will review such findings to ascertain whether they are supported by competent evidence or inferences fairly deducible therefrom.

2. SAME—ERRONEOUS FINDING—AWARD AFFIRMED WHERE JUST UNDER RECORD.

   Although the board erroneously found that defendants had

On right and extent of review of findings of commission under workmen's compensation act, see note in L. R. A. 1917D, 186.

On the question as to when husband and wife are living together within the meaning of workmen's compensation act, see note in L. R. A. 1916A, 370.

waived proof that claim for compensation was made within six months of the date of the accident, as required by the act (section 16, pt. 2), an award to plaintiff will be affirmed, on certiorari, notwithstanding said erroneous finding, where it appears by undisputed testimony that the claim was seasonably made, and the board should have so found; it ·being the duty of this court, under section 12, pt. 3, of the act, "to make such further orders in respect thereto as justice may require."

3. Same—"Justifiable Cause"—Construction of Statute—Legislative Intent—Presumptions—Dependents.
Where the words, "justifiable cause," have a well-defined meaning in this State when applied to the separation of husband and wife, it must be assumed that the legislature intended that said words should be interpreted and understood as so used in Act No. 64, Pub. Acts 1919, amending the workmen's compensation act, providing that a wife is wholly dependent for support upon a husband from whom she was "living apart for justifiable cause" at the time of his death, in the absence of anything in said act to show a contrary intention.

4. Same—Finding of Board—Evidence—Sufficiency.
Testimony that, about 15 years before his death, deceased husband left his home, and, without plaintiff wife's consent, made his home in another city; that he visited her occasionally for a few days at a time, at which times marital relations were resumed; that his last visit was made about two years prior to his death; that he brought and sent money and provisions for her support, the last contribution being made within a year of his death; that plaintiff was at all times ready and willing to have him return to her home or she to go to his home had he so requested, *held*, to justify a finding by the board that plaintiff was "living apart from her said husband for justifiable cause," and was a dependent under the provisions of the workmen's compensation act as amended by Act No. 64, Public Acts 1919.

5. Same—Constitutional Law—Delegation of Judicial Power.
Defendants' contention that the delegation of power to the board to determine when a wife was so "living apart" from her husband for "justifiable cause" is a delegation of judicial power contrary to section 1, Art. 7, of the Constitution, providing that the judicial power of the

State shall be vested in the courts, cannot be sustained, since such *quasi*-judicial powers are necessary to the board to carry into effect the purposes of the act, and the question is controlled by the decision in *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8.

Certiorari to Industrial Accident Board. Submitted October 5, 1921. (Docket No. 15.) Decided February 8, 1922.

Millie Kirkley presented her claim for compensation against the General Baking Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Casualty Reciprocal Exchange, insurer, bring certiorari. Affirmed.

*Kerr & Lacey,* for appellants.

*Hatch & Gillette,* for appellee.

SHARPE, J.    Plaintiff claims compensation for the death of her husband, which occurred on January 15, 1920, due to an accidental personal injury sustained by him on December 15, 1919, while in the employ of the defendant baking company.    Compensation was denied by the arbitration board.    On appeal to the full board, an allowance of $14 per week for 300 weeks was made.    The errors in the findings complained of are:

(1) There is no sufficient proof that plaintiff's claim for compensation was made within six months.

(2) The board had no authority to find, nor did the proofs justify a finding, that plaintiff was living apart from her husband for justifiable cause.

1. Under section 15 of part 2 of the workmen's compensation act (2 Comp. Laws 1915, § 5445), notice of the injury must be given to the employer within

three months and claim for compensation therefor made within six months after the happening thereof. The defendants concede they had notice of the injury within the three months and gave notice thereof to the board as required by the statute. The board in its findings says:

"We are unable to find from this record that claim for compensation was made within six months from death of decedent."

The board then calls attention to the fifth of its rules of practice and procedure, which provides, in effect, that when a claim for compensation is filed, if the employer denies liability he shall file a denial with the board, setting forth with reasonable detail and accuracy the facts and circumstances upon which he relies as a defense to such claim. It then quotes a letter received by it from the attorneys for the defendants, dated May 29, 1920, reading as follows:

"In re: Andrew Kirkley vs. General Baking Co.
                "Dec. 15, 1919.
"Gentlemen:—Careful investigation in the above captioned case discloses to the satisfaction of ourselves, as well as our clients, that persons claiming compensation as dependents are not entitled to receive under the terms and provisions of the Michigan act.
"The matter was not only investigated carefully prior to the death of Mr. Kirkley but subsequent thereto and all the alleged members of deceased's family were interviewed. Any claims for compensation will be defended upon the ground that parties claiming are not entitled to any benefit under the law and, furthermore, such claimants will be compelled to prove their claim in the premise in every particular."

—and concludes that "under the denial of liability," as contained in this letter, "it is our finding that the applicant was not required to prove that claim for compensation was made within six months."

This finding was not justified by the proof. At the

time the letter was written, the six months allowed by the statute for presenting a claim for compensation had not expired. The defendants could not at that time have predicated a denial of liability on the applicant's failure to make a claim for compensation within the time prescribed.

We have read this record with care. We cannot understand why the board was unable to find that a claim for compensation had been made by applicant within the six months following the accident. A claim, on a form provided by the board, addressed to the baking company, and signed by the applicant, dated March 20, 1920, was received by the board on March 22, 1920. On being shown this paper, which was in the files of the board, LeRoy Kirkley, the son of applicant, who apparently had made an affidavit of mailing, was asked:

"*Q.* Mr. Kirkley, did you mail that notice, according to that affidavit, to the General Baking Company?

"*A.* Yes, sir.

"*Mr. Lacey:* We object to this. What affidavit?

"*Q.* Did you mail a notice of claim to the General Baking Company?

"*A.* I did, sir.

"*Q.* And when did you mail it?

"*A.* The same day that you gave it to me to mail. (He then refreshed his recollection from the affidavit.)

"*A.* The 22d day of March.  *  *  *

"*Q.* What day of March do you claim you mailed that paper?

"*A.* On the 20th.  *  *  *

"*Mr. Lacey:* Is that when you mailed it, LeRoy?

"*A.* On the 20th day of March.

"*Mr. Lacey:* All right, thank you.

"By Commissioner Brown: "*Q.* Now, what was the paper that you mailed?

"*A.* Can't you make them understand?

"*Q.* Well, look at this paper, and can you tell, do you know whether that is a copy of the paper that you mailed?

"*A*. Yes, sir, it is.    It is.

"*Q*. Who gave it to you to mail?

"*A*. Mr. Gillette gave it to me.

"*Q*. Refreshing your memory from this affidavit, you say that was the 20th of March?

"*A*. Yes, sir, I do.

"*Mr. Gillette:*    The affidavit is no evidence, of course.

"*Q*. Who did you address it to?    Who was it addressed to?

"*A*. One was addressed to the General Baking Company, and the other one to Lansing.

"*Q*. General Baking Company where?

"*A*. Detroit, Michigan—Cherry street.

"*Q*. Where did you put the letter?    Where did you mail it?

"*A*. Ypsilanti postoffice.

"By Mr. Gillette:    "*Q*. Any doubt about that, Mr. Kirkley?

"*A*. No, it ain't no doubt about it.    I mailed it."

The record does not show that this witness was cross-examined as to the testimony thus given.    Mr. Kerr, one of the attorneys for defendants, was sworn as a witness.    On being interrogated on cross-examination relative to the letter of May 29th, he was asked:

"*Q*. Well, you wouldn't deny liability unless there had been some claim made.—That letter that was offered in evidence here.    Now, the facts are, aren't they, Mr. Kerr, that the firm, whatever it is, of the General Baking Company notified you that they had received a claim for compensation and you wrote that letter in reply to it?

"*A*. No, that would not be the circumstance.    I am not certain that we did not receive a claim from the General Baking Company—I do not remember as to that now—but that would not prompt this letter.    *  *  *

"*Q*. But you deny that any claim was ever made for compensation within six months?

"*A*. Claim for compensation was not made upon me, Mr. Gillette.

"*Q*. Oh, upon you personally.

"*A.* Neither LeRoy Kirkley nor Millie Kirkley said anything to me about claim for compensation."

The testimony of LeRoy fairly established the fact that a letter containing a claim for compensation, a copy of that appearing in the files of the board, the sufficiency of which is not questioned, addressed to the defendant baking company at its office in Detroit, was mailed by him on March 20th.   There is nothing in the record to contradict his sworn statement to that effect, nor was there any denial of the receipt of the letter by any officer or employee of the company.   The fact that such a claim was made was therefore fully established by the undisputed proofs.

By the terms of section 12 of part 3 of the act (2 Comp. Laws 1915, § 5465) the findings of fact made by the board, in the absence of fraud, are conclusive, but this court·on many occasions has reviewed such findings to ascertain whether they were supported by competent evidence or inferences fairly deducible therefrom, and in the absence of such evidence or inferences has set the award aside.   *Ginsberg* v. *Adding Machine Co.*, 204 Mich. 130; *Chaudier* v. *Lumber Co.*, 206 Mich. 433; *Ortner* v. *Carburetor Co.*, 207 Mich. 610.   If, in this case, the board had denied compensation, based on a finding that no claim therefor had been made within six months after the accident, and such finding had been reviewed by the applicant in this court, there would seem to be no question but that such finding would have been set aside.   The defendants can have no greater right on the review of a finding on which liability is based than the applicant where the finding is such as to preclude an award of liability.   It is apparent to us that the board overlooked the uncontradicted testimony of LeRoy Kirkley when it made the finding above quoted.

Under the provision of said section 12, it is made the duty of this court, when called upon to review the

action of the board, "to make such further orders in respect thereto as justice may require." In view of the testimony heretofore quoted, our duty seems plain. Though we must hold that the board was in error in finding that defendants had waived proof that claim for compensation had been made within six months, we feel constrained to also hold that the record discloses that such proof had been made. It follows that justice requires us to affirm the action of the board so far as it is dependent on a compliance by applicant with the statute in that respect. See, *Andrejwski* v. *Wolverine Coal Co.*, 182 Mich. 298, 310 (Ann. Cas. 1916D, 724).

2. The act (2 Comp. Laws 1915, § 5436) as amended by Act No. 64, Public Acts of 1919, provides:

"SEC. 6. The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

"(a) A wife upon a husband with whom she lives at the time of his death, or from whom, at the time of his death, the industrial accident board shall find the wife was living apart for justifiable cause or because he had deserted her."

The board found the plaintiff was the wife of the deceased and at the time of his death "was living apart from her said husband for justifiable cause." Was there competent proof to support this finding? It appears from the record that about 15 years before the death of plaintiff's husband he left the home in which they then lived at Ypsilanti without her consent and made his home in Detroit thereafter; that he visited her occasionally for a few days at a time, his last visit being about two years prior to his decease. At the time of such visits, marital relations were resumed. He brought and sent money and provisions for her support. His last contribution was made within a year before his death. Plaintiff was at all times ready and willing to have him return to her home. She

would have shared his home in Detroit with him at any time, had he so requested. She received letters from him and, being unable to write herself, procured a neighbor to answer them for her. She maintained a home in Ypsilanti. He had living rooms in Detroit. There can be no question but that she was "living apart" from her husband at the time of his death. Was there justifiable cause for her doing so? These words have a well-defined meaning in this State when applied to the separation of husband and wife. See *Porritt* v. *Porritt*, 18 Mich. 420; *Randall* v. *Randall*, 37 Mich. 563; *Warner* v. *Warner*, 54 Mich. 492; *Powell* v. *Powell*, 58 Mich. 299; *Wright* v. *Wright*, 80 Mich. 572; *People* v. *Stickle*, 156 Mich. 557; *Beckmann* v. *Beckmann*, 209 Mich. 628. By using them in this amendment, it must be assumed that the legislature intended that they should be interpreted and understood as defined and construed by this court, where there is nothing in the act to show a contrary intention.

It was the duty of the deceased to support his wife and to live with her. It was her duty to consort with him and discharge generally the duties of a wife. He failed to perform his duty as required by law. Their separation was not with her consent, nor was it owing to any failure of marital duty on her part. She was living apart from him for the reason that he would not live with her in the home at Ypsilanti or provide a home for her and consent to her occupying it with him in Detroit. She was in no way to blame for their separation. She was ready and willing to live with him at any time he requested her to do so and made provision therefor. What better or more justifiable cause for their living apart could there have been so far as she was concerned? We think there was ample proof to support the finding that at the time of his death she was "living apart" from the deceased "for justifiable cause."

Massachusetts seems to be the only State in which a similar provision is contained in the compensation law. Our attention is called to the following cases in which this provision has been construed by the supreme court of that State: *Newman's Case,* 222 Mass. 563 (111 N. E. 359, L. R. A. 1915C, 1145) ; *Fierro's Case,* 223 Mass. 378 (111 N. E. 957) ; *Veber's Case,* 224 Mass. 86 (112 N. E. 485), and *Gorski's Case,* 227 Mass. 456 (116 N. E. 811). As these cases were decided prior to the adoption of the 1919 amendment, counsel for defendants call our attention to the rule stated in *Drennan* v. *People,* 10 Mich. 169, 177:

"As a general rule, it is a fair inference that the legislature, in adopting a statute from another State, which has there been judicially construed, intended to give it the same interpretation it had there received by judicial construction."

Conceding the application of this rule, we are content to follow the holding in *Newman's Case* and the reasoning on which it is founded. It is there said:

"A careful examination of the evidence plainly shows that several years before the death of the husband he and his wife separated by mutual consent and agreement, and continued to live apart up to the time of his death. * * * The correct determination of this question depends upon what is meant by the phrase 'living apart for justifiable cause.' These words have been interpreted by this court in numerous decisions. They have been construed in divorce proceedings brought by a wife against her husband for desertion, in petitions brought by her for separate support and maintenance, as well as in actions brought against the husband to recover for necessaries furnished to his wife. These words have acquired a peculiar and appropriate meaning in the law. We are therefore bound to construe them in accordance with such meaning. * * * Where a woman lives apart from her husband and it is contended that such separation is for justifiable cause, ordinarily it must ap-

pear that such living apart is due to some failure of duty or misconduct on the part of the husband, but this classification does not exclude cases of living apart because of physical or mental infirmities of either or both husband and wife. If the wife lives apart from her husband by mutual consent, she is not living apart from him for justifiable cause, and she is not entitled to a divorce upon the ground of desertion."

While the facts in the other cases were somewhat different and it may be said that the court inferred a consent on the part of the wife by reason of their long separation, the holding in each case is bottomed on the opinion in *Newman's Case.* It does not appear in any of these cases that the wife was hopeful and expectant that her husband would return to her or provide a home for her elsewhere and invite her to occupy it with him as appears from the proofs presented by this record.

3. The power of the legislature to impose the duty on the board to make such a finding is challenged by the defendants. It is said to be a delegation of judicial power to a board contrary to section 1 of article 7 of the Constitution of Michigan, which provides that the judicial power of the State shall be vested in the courts. This question was raised as to several provisions of this act before this amendment. The powers and duties of the board and its exercise of such incidental *quasi*-judicial powers as are necessary to carry its purposes into effect were considered and discussed at length by Mr. Justice STEERE in *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 8, and the act upheld as a proper exercise of legislative power.

The board found that the plaintiff was living apart from her husband and the reasons therefor. The duty to determine whether she was so "living apart" from her husband "for justifiable cause" is no more judicial than the determination whether the disability for which claim is made is due to an "accidental injury"

arising out of and in the course of employment. It may be noted that this question does not appear to have been presented in any of the cases considered by the Massachusetts court.

The award is affirmed.

FELLOWS, C. J., and WIEST, STONE, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.