PHILIP BENDER, Claimant and Appellant v. ROUNDUP MINING COMPANY, Defendant and Respondent.
No. 10117.
Submitted February 29, 1960. Decided August 9, 1960.
Rehearing denied November 17, 1960.
356 P.2d 469.

Myles J. Thomas, Helena, argued orally for appellant.

W. S. Mather, Roundup, argued orally for respondent.

HONORABLE FRANK I. HASWELL, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the fourteenth judicial district, Musselshell County, denying compensation to appellant herein under the Workmen's Compensation Act.

Appellant Philip Bender filed his written claim for compensation with the Industrial Accident Board on July 17, 1957, claiming permanent total disability as a result of an alleged industrial accident occurring on January 30, 1957. Appellant, a helper on a joy loader in the respondent's coal mine in Roundup, Montana, claimed that while attempting to remove some rock from the coal, a piece of the rock broke off causing him to slip and fall on his back, thereby wrenching and injuring it. Appellant further claimed that from five to seven days after the alleged accident when he went to pick up his paycheck he

informed an employee of respondent, one Sid Clark, of the accident and injury.

Thereafter appellant Bender filed a formal petition with the Industrial Accident Board requesting a hearing on his claim, and on May 6, 1958, such hearing was held by the Industrial Accident Board at Billings, Montana, before Robert F. Swanberg, Chairman of the Board. On April 6, 1959, the Board entered its findings of fact, conclusions of law and order denying compensation.

Appellant's application for rehearing before the Board being denied, appeal was taken to the district court of the fourteenth judicial district, Musselshell County, and came on for hearing at which time additional testimony was taken by the district court. Upon this testimony and the certified transcript of the proceedings before the Board, the district court upheld the Board's findings and order, and entered judgment denying and dismissing appellant's claim for compensation.

Both the district court and the Board held that appellant had not complied with the provisions of section 92-807, R.C.M. 1947, in that he did not give written notice of the alleged accidental injury within 30 days thereafter, and that there was no actual knowledge of the claimed accident and injury on the part of the employer.

Section 92-807, at the time of the alleged accidental injury, provided as follows:

"No claims to recover compensation under this act for injuries not resulting in death shall be maintained unless, within thirty days after the occurrence of the accident which is claimed to have caused the injury, notice in writing, stating the name and address of the person injured, the time and place where the accident occurred, and the nature of the injury, and signed by the person injured. or someone in his behalf, shall be served upon the employer or the insurer, except as otherwise provided in section 92-602; provided, however, that actual knowledge of such accident and injury on the part of such employer or his

managing agent or superintendent in charge of the work upon which the injured employee was engaged at the time of the injury shall be equivalent to such service.''

The provisions of section 92-807 are mandatory and compliance with its requirements is indispensable to maintaining a claim for compensation under the Workmen's Compensation Act. Maki v. Anaconda Copper Mining Co., 87 Mont. 314, 287 P. 170; State ex rel. Magelo v. Industrial Accident Board, 102 Mont. 455, 59 P.2d 785; Dean v. Anaconda Co., 135 Mont. 13, 335 P.2d 854.

Appellant admitted in his testimony before the Industrial Accident Board, and it is conceded by counsel for both parties, that no notice in writing of the alleged accident and injury within 30 days thereof was given to the employer. Thus the question before the Board and the district court was whether the employer, his managing agent or superintendent in charge of the work on which appellant was engaged at the time of his alleged injury, had actual knowledge of the accident and injury. Both the Board and the district court answered this question in the negative and all specifications of error are based on this finding.

A review of the record indicates that appellant Bender testified that a few days after the alleged accident he told one Sid Clark, an employee of respondent, that he had had an accident in the mine, hurt his back and had been in the hospital. Appellant's testimony in this regard was corroborated by his wife. Sid Clark testified that he had no recollection of any such statements being made to him by appellant, that if appellant had made such statements to him he would have referred appellant to his foreman and that he had no recollection of referring appellant to his foreman.

This court has previously held that the testimony of a witness that he does not remember whether a certain event or conversation took place does not contradict positive testimony that such event or conversation did take place. Lasby v. Bur-

gess, 88 Mont. 49, 289 P. 1028; Lindblom v. Employers' Liability Assurance Corp., 88 Mont. 488, 295 P. 1007; Blaser v. Clinton Irrig. Dist., 100 Mont. 459, 53 P.2d 1141; In re Nelson, 103 Mont. 43, 60 P.2d 365. Thus we have the uncontradicted positive testimony of appellant and his wife that Sid Clark had actual knowledge of appellant's accident and injury within a week after it is claimed to have occurred.

But it does not follow that the trial court in all cases is bound by the positive and uncontradicted testimony of a witness. While it is undoubtedly the general rule that a trial court may not disregard and reject uncontroverted credible evidence (State ex rel. Nagle v. Naughton, 103 Mont. 306, 63 P.2d 123; Higby v. Hooper, 124 Mont. 331, 221 P.2d 1043; In re Minder's Estate, 128 Mont. 1, 270 P.2d 404, 45 A.L.R.2d 898), the credibility of the witness and the weight to be given his testimony are questions to be determined by the trial court even though the witness' testimony is not directly controverted *by other verbal testimony.* For a discussion of this rule and its various ramifications see 8 A.L.R. 796; 20 Am.Jur., Evidence, § 1180, p. 1030; 32 C.J.S. Evidence § 1038, pp. 1093-1094; O'Sullivan v. Simpson, 123 Mont. 314, 212 P.2d 435.

It is well-settled that in appeals under the Workmen's Compensation Act, the Supreme Court must affirm the findings of the Industrial Accident Board and the district court if the evidence is sufficient to sustain their findings. Landeen v. Toole County Refining Co., 85 Mont. 41, 277 P. 615; Nigretto v. Industrial Accident Fund, 111 Mont. 83, 106 P.2d 178; Morgan v. Industrial Accident Board, 133 Mont. 254, 321 P.2d 232; Birnie v. United States Gypsum Co., 134 Mont. 39, 328 P.2d 133; Dean v. Anaconda Co., supra.

Is there sufficient evidence in the record to sustain the findings of the Industrial Accident Board and the district court that neither the employer, his managing agent, nor superintendent in charge of the work had actual knowledge of an acci-

dent and injury to appellant? We believe there is. The following undisputed facts appear in the record:

(1) That on the night of the alleged accident, appellant went home without complaint to his foreman or anyone else in authority at the mine.

(2) The foreman's absentee report shows absence due to "illness" and not to "accident".

(3) That during the five days that appellant was hospitalized, appellant at no time indicated to his attending physician that he had suffered any accidental injury.

(4) That appellant's medical and hospital expenses were paid by the United Mine Workers who do not pay such expenses in Workmen's Compensation cases.

(5) That when appellant returned to work at the mine after the alleged accident, he handed the foreman a medical slip from his doctor stating he was now able to return to work and that he had been "ill", and at that time appellant did not indicate to the foreman he had suffered any injury.

(6) That after appellant returned to work he worked regularly and continuously at the mine for about two and one-half months without any complaint of accidental injury until he was laid off along with 50 to 60 other miners due to a reduction in the work force.

(7) That the first written claim of any accidental injury to appellant was some five and one-half months after the alleged accident, and approximately one month before his unemployment compensation benefits ceased.

Further, there are direct contradictions of parts of appellant's testimony. Appellant testified that after the accident he rode out of the mine in one of the mine cars with a group of other miners, that he didn't see his foreman either in the mine or above the ground after the accident, and that the only person connected with the mine that he ever told about the accident was Sid Clark when he returned several days later to pick up his paycheck. His own foreman testified that he saw appellant and

checked him out as he came out of the mine after the alleged accident, and that appellant didn't say a thing about any accidental injury. Appellant also testified that he had no back trouble prior to the alleged accident, but Dr. Berg's letter which was admitted in evidence indicates that appellant told him that he had back trouble for two years prior to the alleged accident.

In addition it must be pointed out that appellant and his wife had a direct pecuniary interest in the outcome of the claim and were in serious financial straits at the time of the hearing. Also the Board had an opportunity to observe their appearance, demeanor and manner of testifying which we do not have.

The credibility of the witness and the weight to be given his testimony is exclusively for the trier of the facts. Dean v. Anaconda Co., supra; Rentfro v. Dettwiler, 95 Mont. 391, 26 P.2d 992; Wallace v. Wallace, 85 Mont. 492, 279 P. 374, 66 A.L.R. 587; Bowen v. Webb, 37 Mont. 479, 97 P. 839. We cannot say that the Industrial Accident Board and the trial court were not justified in disregarding and rejecting the testimony of appellant and his wife on this basis after viewing, testing and comparing such testimony with the undisputed facts and the contradictions in the evidence set out above. When so viewed a substantial doubt is cast upon their testimony which was resolved against them by the Board and the district court. In this we find no error.

There is yet another reason why appellant cannot prevail. Section 92-807 provides that actual knowledge of the accident and injury by the employer sufficient to excuse the filing of written notice by the injured workman must be knowledge ''on the part of such employer or his managing agent or superintendent in charge of the work upon which the injured employee was engaged at the time of injury''. Was Sid Clark the employer, the managing agent of the employer or the superintendent in charge of the work upon which appellant was engaged at the time of the alleged injury? The following uncontradicted evidence appears in the record:

(1) Sid Clark was not an officer or stockholder of respondent corporation and had no interest of any kind therein.

- (2) Sid Clark was retired, drawing social security benefits and was paid $1,200 per year for advisory services, helping out the office force occasionally and assisting with the book work; that Sid Clark was "an old firehorse" who couldn't leave the job after he retired so he went to respondent's office every day because "it is like going to church or a poolhall or any place else, it is a good place to loaf".

(3) Sid Clark had no authority to accept accident reports, fill out the forms or anything of that nature.

(4) Joseph Fisher was the managing agent of the employer and Frank Oset, Jr., was the superintendent in charge of the work, i. e., the foreman in the mine, at the time of the alleged accident and injury.

(5) That at the time appellant claims he told Sid Clark about the accident and injury, Sid Clark was paying, assisting and helping in the paymaster's office and "kind of acting as an assistant to fill in for the assistant secretary-treasurer."

The purpose of the notice requirement or actual knowledge in lieu thereof is to enable the employer to protect himself by prompt investigation of the claimed accident and prompt treatment of the injury involved with a view toward minimizing its effects by proper medical care. See 2 Larson, Workmen's Compensation Law, § 78.00, et seq. Thus the only common sense interpretation of that portion of section 92-807, quoted above, is that there must be actual knowledge of the accident and injury on the part of someone in authority in respondent's business occupying a supervisory status as a representative of the employer, so that in the ordinary course of business, steps will be taken to protect the employer in line with the purpose of the statute. It is clear that Sid Clark did not occupy such status and was not the employer, his managing agent or superintendent in charge of the work upon which appellant was engaged at the time of the alleged injury.

The record contains sufficient credible evidence to sustain the findings of the Industrial Accident Board and the district court. Such conclusion renders unnecessary the consideration of other specifications of error.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE ADAIR dissenting.

Philip Bender, the claimant herein, was injured in an industrial accident while working for the Roundup Mining Company on or about January 30, 1957. On the day following the accident, Bender was confined to Roundup Memorial Hospital where he stayed five days. While so confined, X-ray pictures were taken of his back. After discharge from the hospital, the claimant went to the office of the Roundup Mining Company to pick up his paycheck. While there, Bender informed and notified one Sid Clark, an employee of the Roundup Mining Company of his injury.

At the time Bender informed Clark of the fact that he had sustained an accidental injury while at work, Clark was in the Roundup Mining Company's office performing the task of issuing payroll checks.

Thereafter, Bender returned to work. Following the shutdown of the mine in the spring, Bender again consulted a doctor about his back, and it was then found that he had ruptured a disk. An operation was performed to correct or remedy the condition and subsequently Bender filed his claim for workmen's compensation. Philip Bender is married and has four children. He is illiterate. He is presently unemployed and unemployable. His family is receiving welfare allowance from the county. The instant claim was brought against the Roundup Mining Company for the reason that it is a Plan I insurer.

The Industrial Accident Board, the district court, and now a

majority of this court have denied Philip Bender the workman's compensation to which, in my opinion, he is rightfully and legally entitled.

The chief ground of the disallowance is that the information and notice imparted and given to Sid Clark by the claimant, Philip Bender, was not notice to the employer, Roundup Mining Company.

It is highly important that we keep constantly in mind the fact that the Roundup Mining Company, the self-insurer here, is a corporation. We must also remember that a corporation acts only through agents and that these agents may also have sub-agents. The agency between the corporation and others may be either actual or ostensible.

R.C.M. 1947, § 2-105, provides: "An agency is actual when the agent is really *employed* by the principal." Emphasis supplied.

R.C.M. 1947, § 2-106, provides: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a *third person to believe* another to be his agent who is not really employed by him." Emphasis supplied.

Where either an actual or ostensible agency exists then R.C.M. 1947, § 2-203, applies, viz: "As against a principal, both principal and agent are deemed *to have notice of whatever either has notice of* and ought, in good faith, and the exercise of ordinary care and diligence, to communicate to the other." Emphasis supplied.

Where agency, either actual or ostensible, is shown then the statutory and general rule applies that notice to the agent is notice to the principal.

The highly technical evidentiary propositions advanced in the majority opinion is merely an attempt to establish Sid Clark's position, capacity and employment from the view point of the Roundup Mining Company, the employer and insurer herein. The majority opinion overlooks what Sid Clark's position, capacity and employment appeared to be to the illiterate

coal miner, Philip Bender, and this is an important and controlling feature in this case.

The record before this court shows that Sid Clark was at least the ostensible agent of the Roundup Mining Company. The test of liability imposed upon the principal by reason of Sid Clark's dealing with other persons employed by the principal should determine the ostensible or apparent position, capacity, employment and status of Sid Clark as between the principal and its employees.

It is no defense for the principal, Roundup Mining Company, to disclose at the hearing before the Industrial Accident Board, the actual authority or lack of authority of its apparent agent, Sid Clark.

The evidentiary propositions, set out and relied upon in the majority opinion, only go to show what Sid Clark's *actual* status was as between himself and the Roundup Mining Company. Nowhere in the record does it appear that Philip Bender, the injured workman, *knew or should have known* the true status as between Sid Clark and the employer, Roundup Mining Company. In this connection, it is quite important to set out some of Sid Clark's background.

Clark, only two months prior to January 30, 1957, had been the president and majority stockholder of the Roundup Mining Company. As such he had actively engaged in managing the operation of the Company.

Sometime in December 1956, Clark sold his interest in the Company. Following the sale, however, it appears that "Sid Clark was 'an old firehorse' who couldn't leave the job" so he went to respondent's office every day.

Following the sale of his stock, it appears that Clark was then hired by Roundup Mining Company at a salary of $100 per month.

R.C.M. 1947, § 41-101, reads:

"41-101. (7756) *Employment defined.* The contract of employment is a contract by which one, who is called the employer,

engages another, who is called the employee, to do something for the benefit of the employer, or of a third person."

The defendant's witness, Joseph Fisher, vice president of the Roundup Mining Company, testified as follows:

"Q. Now tell me about Sid Clark. What are his duties and who is he? A. Well, Mr. Clark was an officer with the company. He is retired and was *retained in an advisory capacity* at the mine *now*.

"Q. Well, at the time of this accident in January of 1957 — A. *He was in the same category at that time, he was helping out there in the office with the bookwork, and on paydays he would help with the boys at the window, and so on, that is right.*
\* \* \*

"Q. What kind of an officer had Mr. Clark been of the company? A. Well he has been practically every officer there ever has been held by the company there \* \* \*

"Q. *What wages or salary or remuneration did you give to Mr. Clark for his advisory services that he performed? A. At this time Mr. Clark gets $100 a month; he keeps the books and just odds and ends around the company.*"

Thus contrary to the conclusions reached in the majority opinion herein, Sid Clark was *an employee* of the Roundup Mining Company. Sid Clark was *not* retired.

Sid Clark's actual or apparent authority to act for the Roundup Mining Company as seen from Philip Bender's viewpoint never changed. When Bender was hired by the Company, Sid Clark was the principal stockholder and active manager of the Roundup Mining Company. It appears that thereafter Sid Clark sold his shares of stock and ceased being an officer of the Company, but he then became and was the hired employee of the Company and continued to report at the office of the Company regularly and to perform the same general functions for the Company that he had performed previously.

While Clark's actual authority, after selling his stock, may have possibly become more limited, yet to all outward appear-

ances his status was the same as that before the stock sale. Bender testified that it was his impression that Sid Clark was the boss or superintendent of the Company's mine.

The Roundup Mining Company had full knowledge of Sid Clark's true authority and yet there is no evidence that such was ever disclosed to the employees generally and, or to, Philip Bender in particular.

To all appearances Sid Clark's status with the mining company never changed after the sale of his interest in the Company. For this reason, the Roundup Mining Company is estopped from denying that it did not have notice imparted to it through Sid Clark that Philip Bender had suffered an industrial accident. This case is and should be governed by Lindblom v. Employers' Liability Assurance Corp., 88 Mont. 488, 295 P. 1007, the leading and controlling authority which is being overlooked by the majority opinion herein. In the Lindblom case, supra, this court at page 493 of 88 Mont., at page 1008 of 295 P., said:

" 'Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. When a party unjustly contrives to put another in a dilemma and to subject him to

necessity and distress and he acts one way, it is not for the wrongdoer to insist that he should have acted another way.' 21 C.J. sec. 116, p. 1113.

"Subdivision 3 of section 10605, Revised Codes 1921 [now section 93-1301-6(3), R.C.M. 1947], which says that, 'whenever a party has by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it,' is but a crystalization into statutory form of the rule above stated, and forms the basic principle of equitable estoppel. Waddell v. School District, 74 Mont. 91, 238 P. 884.

" 'Equitable estoppels operate as effectually as technical estoppels. They cannot in the nature of things be subjected to fixed and settled rules of universal application, like legal estoppels, nor hampered by the narrow confines of technical formula. So, while the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case.' 10 R.C.L. 689.

"Generally speaking the following are the essential elements which must enter into and form a part of an equitable estoppel in all of its applications: '1. There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unkown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct

must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. * * *' 2 Pomeroy's Equity Jurisprudence (4th Ed.) 1644.''

Having defined and set out the elements of equitable estoppel, the court then held that the doctrine applied to the Workmen's Compensation Act and at page 498 of 88 Mont., at page 1010 of 295 P. said:

*"The Workmen's Compensation Act was enacted for the benefit of the employee,* and we think it clear that section 2899, supra, limiting the time within which a claim can be made under it, was designed for the benefit of the employer. This being true, we can see no sound reason why the employer or insurance carrier, for whose benefit that section was enacted, may not so far waive these provisions that they are estopped to insist upon its protection. Similar conclusions were reached in American Mut. Liability Ins. Co. v. Hamilton, 145 Va. 391, 135 S.E. 21; Greeley Gas & Fuel Co. v. Thomas, 87 Colo. 486, 288 P. 1051; Kettering Mercantile Co. v. Fox, 77 Colo. 90, 234 P. 464; Mulhall v. Nashua Mfg. Co., 80 N.H. 194, 115 A. 449.

''That an employer may waive, or by his conduct be estopped from asserting, the benefit of statutes similar to our section 2899, supra, is recognized in O'Esau v. E. W. Bliss Co., 188 App.Div. 385, 177 N.Y.S. 203; Twonko v. Rome Brass & Copper Co., 224 N.Y. 263, 120 N.E. 638; Georgia Casualty Co. v. Ward, Tex.Civ.App., 220 S.W. 380; Ohio Oil Co. v. Industrial Commission, 293 Ill. 461, 127 N.E. 743; McClenahan v. Oklahoma Ry. Co., 131 Okl. 73, 267 P. 657; Katsanos v. Industrial Commission (Utah), 267 P. 781; Industrial Commission v. Hover & Co., 82 Colo. 335, 259 P. 509; Red River Lumber Co. v. Pillsbury, 174 Cal. 37, 161 P. 982; United States F. & G. Co. v.

Pillsbury, 174 Cal. 198, 162 P. 638; Tribune Co. v. Industrial Com., 290 Ill. 402, 125 N.E. 351; Morin's Case, 122 Me. 338, 120 A. 44; Kirkley v. General Baking Co., 217 Mich. 307, 186 N.W. 482; Utah Delaware Min. Co. v. Industrial Com., (Utah) 289 P. 94; Long v. Watts, 129 Kan. 489, 283 P. 654; Kraemer v. Mergenthaler Linotype Co., 198 App.Div. 60, 189 N.Y.S. 193.''

In the Lindblom case, as in the instant case, the principal had clothed another party with ostensible authority to act for it. In speaking of the legal effect of such actions, this court said:

''* * * yet the proof satisfactorily establishes that it clothed the agency with ostensible authority sufficient to enable it to bind its principal as to third persons who in good faith relied and acted upon such apparent authority.

'' 'Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.' Section 7947, Rev.Codes 1921 [now R.C.M. 1947, § 2-124].

'' '*Where a principal makes it possible, through his acts, for his own agent to inflict injury, the result of such injury should not be passed on to innocent persons who have dealt with the agent in good faith under his apparent authority. The law forbids the principal to deny authority in the agent which his own conduct has invited those with whom he was dealing to assume he possessed. In such a case a principal is bound by his acts and estopped by his own conduct from denying the authority of the agent to act.* [Citing cases.]' '' Emphasis supplied.

It is evident that the Roundup Mining Company is and should be estopped from asserting that it did not have notice of Philip Bender's accident, *Sid Clark was allowed to appear as a person in authority.* As a former president of the Company, it is a certainty that Clark knew the ramifications of the Workmen's Compensation Act, and when informed by Bender of the accident Clark kept silent. He did not inform Bender that he was not authorized to receive notice of the accident, nor did he in-

form Bender of the proper procedure which Bender should follow in reporting his accident. Yet Clark full well knew this procedure.

Bender was not aware of Clark's purported lack of authority. It was but natural that Bender would make no effort to give further notice to his employer since he was not informed that any other or further notice was necessary. Bender having informed Clark of the accident relied upon Clark's apparent and ostensible authority, and it is now asserted that Bender failed to give any binding notice to the Roundup Mining Company.

Under the particular facts of this case, the employer Company should be denied the right to urge that the claimant Bender had not complied with the law. The reliance by the injured employee, Philip Bender, upon Sid Clark's ostensible agency effected an estoppel precluding the Roundup Mining Company from denying Sid Clark's agency. Such would be the effect in any ordinary civil action and here, under the Workmen's Compensation Act, the case for the injured workman, Philip Bender, becomes that much more certain.

Particularly pertinent here is the language of this court in Yurkovich v. Industrial Accident Board, 132 Mont. 77, 83, 314 P.2d 866, 870, wherein this court used the following language concerning the Industrial Accident Board, which applies with equal force to the employer, Roundup Mining Company, in the instant case viz.:

"We again state that the Workmen's Compensation Act is not legislation for the benefit of doctors, * * * neither is it an act for the benefit of the Board. This act is fundamental legislation enacted first for the protection and benefit of the injured workman, his wife and children, and other dependents. By force of the law the employee surrenders his right of an action *in tort* for injury or death. The act however assures him and his dependents of the protection of certain benefits in case of injury or death.

"Secondly, the act fixes a limited liability of the employer so

that the economic loss caused by such accidents shall not rest upon the employee or the public, but that the industry in which the accident occurs shall pay in the first instance for the loss occasioned by such accident.

"In construing a statute the whole act must be read together, and where there are several provisions or particulars such a construction is, if possible, to be adopted as will give effect to all. Compare Corwin v. Beiswanger, 126 Mont. 337, 339, 251 P.2d 252.

"R.C.M. 1947, § 12-202, in part, provides:

" 'The codes establish the law of this state respecting the subjects to which they relate and their provisions and *all proceedings under them are to be liberally construed* with a view *to effect their objects and to promote justice.*' Emphasis supplied.

"This act, in regard to hazardous employment, is compulsory. The court is required to give effect to the objects of a statute and must construe it so as to promote justice, and to give such construction thereto as will preserve the constitutional rights of the parties.

"Each case under the Workmen's Compensation Act must be determined on its own facts and circumstances and the law applicable.

"In Radonich v. Anaconda Copper Min. Co., 91 Mont. 437, 446, 8 P.2d 658, 661, this court said: 'The Industrial Accident Board is a layman's court. * * * The intention of the act is to make practice and procedure before the Board as simple as possible. The act calls for the speedy adjustment of industrial accident cases, regardless of technical forms and requirements * * * '

"Again, in Shugg v. Anaconda Copper Min. Co., 100 Mont. 159, 169, 46 P.2d 435, 439, this court said in referring to the Board's hearing and determination of claims for compensation that 'it [the Industrial Accident Board] is the poor man's court, or *rusticum forum,* wherein a claimant may present his cause

without the assistance of counsel, and therefore, the strict rules of pleading and practice should not be applied. The Act calls for speedy adjustment of accident cases, regardless of technical forms and requirements * * * '

"R.C.M. 1947, § 92-838, specifically commands the courts that 'Whenever this act or any part or section thereof is interpreted by a court, it shall be liberally construed by such court.' This is a specific mandate to the courts, and this court has consistently held that this mandate means the act shall be liberally construed in favor of the claimant. Compare Grief v. Industrial Accident Fund, 108 Mont. 519, 526, 93 P.2d 961.

"In Tabor v. Industrial Accident Fund, 126 Mont. 240, 242, 247 P.2d 472, 473, this court said: 'The Workmen's Compensation Act must be liberally construed *to accomplish its intended purpose*, and construed in favor of the injured workman and his dependents.' Emphasis supplied. State ex rel. Morgan v. Industrial Accident Board, 130 Mont. 272, 300 P.2d 954, and cases therein cited.

"Where as here the employer was engaged in the hazardous business of coal mining, and the employee plaintiff was so engaged by his employer at the time of accidental injury, the statute makes it mandatory that both the employer and employee shall be bound by the compensation act. The second paragraph of section 92-807, R.C.M. 1947, specifically provides that 'any employer engaged in the business of coal mining, or the employees of an employer so engaged, shall be *compelled to be bound* by one of the compensation plans provided by this act.' Emphasis supplied.

"R.C.M. 1947, § 92-1105, as pertinent here, provides:

" 'It is the intent and purpose of compensation plan No. 3 that each industry, trade, occupation, or employment coming under the provisions of said plan shall be liable and pay for all injuries happening to employees coming under the provisions of said plan, and that all funds collected by assessments as herein provided shall be paid into the common fund to be known as

the industrial accident fund, which fund shall be devoted exclusively to the payment of all valid claims for injuries happening in each industry, trade, occupation, or employment coming under the provisions of compensation plan No. 3.'

"Under the facts and circumstances in this case the state Industrial Accident Board, in equity and to promote justice, may not now contend that it did not receive a proper claim from plaintiff. The Board had plenty of time, and it was its duty to notify the plaintiff to present a proper claim if the information given to the Board by the employer and the plaintiff was not sufficient to protect his interests. The Board, according to the record, took no action to protect plaintiff's interests, and made no investigation of its own to determine whether plaintiff's injuries would entitle him to workmen's compensation. Neglecting its duty, the Board is not in position to assert the statute of limitations."

Initially, the majority opinion herein states that Bender's testimony to the effect that he informed Sid Clark that he had suffered an accident in the mine stood uncontradicted. Next, the majority opinion states that the weight to be given this uncontroverted testimony was for the trial court, and that the supreme court will not disturb the findings of either the Industrial Accident Board or of the district court if the evidence is sufficient.

The question that is here presented to this court is not a factual question but strictly one of *law*.

An examination of the findings of fact and conclusions of law of the Industrial Accident Board, and those of the district court shows *no specific finding that Clark was not informed of the accident*. Both the Board and the district court held that Bender is not entitled to compensation, basing such holdings solely upon the unwarranted assumption that Bender did not give notice of the accident and injury to the employer as is required by section 92-807, R.C.M. 1947.

This appeal questions such holding as a *matter of law* and not of fact.

Had the Industrial Accident Board and the district court found that Bender never informed Clark, then the decision of each tribunal would have been that Bender simply gave no notice whatever.

However, the conclusions of law, of which the appellant complains, are not to that effect. They state simply that Bender did not inform "any managing agent or superintendent in charge of the work the said employee was engaged in." This then, to all intents and purposes, is a holding that such information as Bender gave Clark was insufficient to bind the Roundup Mining Company as a *matter of law*. Under the facts set forth, in the record before this court, on this appeal, the holding was and is an erroneous legal conclusion.

In their consideration of Bender's claim for compensation, both the Industrial Accident Board and the district court completely overlooked the doctrine of equitable estoppel which is here applicable, but it does not follow that thereby this court is placed in any straight jacket where it is bound to affirm the oversights and the misapplications of the law by the trial court and the administrative body.

The recital, in the majority opinion herein, of so-called undisputed facts does nothing other than create a smokescreen which may for the moment hide from view the real contention of the injured workman, Philip Bender, and thereby confuse the pertinent undisputed facts.

It is quite true that on the night of the accident Bender, the injured miner, did not inform the *foreman or anyone else in authority at the mine*. Bender testified that on going off shift that night he did not see the foreman.

At no time did the foreman directly testify that he saw Bender at quitting time that night, although the foreman did testify that it was *his habit* to visit the workings and see all the men, and also to check to see that they all came out of the mine.

Testifying as to *his habits,* the foreman reached the conclusion that he thus *had* to see Bender. Such testimony as to the foreman's habits was not and is not a direct contradiction of Bender's testimony. This may and well could have been one time where that which had become more or less a *habit* was not followed or indulged.

Be that as it may, Bender does not rely upon any notice that he gave to anyone other than Sid Clark, who was employed by the defendant company to keep its books and records and who handled the payroll and who personally handed out and delivered to the miners their pay checks.

The record before us shows that on the night in question and immediately after the happening of the accident, Philip Bender did complain to other fellow workers in the mine and this is shown, without contradiction, by the facts surrounding what the majority opinion terms the second undisputed fact, namely, that the foreman's absentee report made the day following the accident, shows Bender's absence on such subsequent day due to *illness,* rather than due to accident.

The first question that presents itself from a reading of the absentee report is: How did the foreman obtain the information and report of Bender's illness?

Was this information and report given to the foreman by Bender?

If the information and report did come from Bender was it not sufficient notice to satisfy the requirements of section 92-807? I do not find from the record before this court on the instant appeal that Bender made such report to the foreman.

Bender did not tell the foreman that his absence was due to illness. However, when he went for and was handed his pay check for the work he had performed for the mining company, Bender did inform Sid Clark that he had hurt himself in the mine.

This is the notice upon which Bender relies.

When Bender finished his shift, on the night in question, he

immediately went to the washhouse. He testified that while there his back *hurt* him so bad that Tony Oset, one of his fellow workers in the mine, had to help him get his boots off.

Tony Oset, accompanied by two other miners, Emil and Johnny Banawitz, then helped Bender from the mine to his home. On arriving at his home Bender immediately went to bed.

The next day Bender's back hurt so bad he obtained help from a friend who transported him by automobile to a doctor's office in Roundup. The doctor promptly ordered that Bender be taken to and placed in the local hospital.

The evening of the day that Bender entered the hospital when the three fellow miners who had helped the injured workman to his home the night before reported for work, they were asked why Bender was absent, whereupon they informed the foreman that Bender was "sick".

How did these fellow miners know that Bender was "sick"?

They knew it because Bender had been "sick" and suffering the night before.

Why these coal miners used the term "sick" is not explained. Many accidents will make a person appear more sick, nauseated and ill than injured. Again, many use the word "sick" to mean "hurt" as well as ill.

"It hurts" is something easily said and everybody knows what it means. However, when we examine the expression more closely or try to ascertain the real meaning of pain in the medical sense, we come up against a surprising fact. Hardly any investigation has been made into this everyday symptom. There is no watertight theory for pain. There is no complete answer to the question: Why does it actually *hurt?*

Again we say, Bender relies upon the notice to Sid Clark and that notice was to the effect that he had been off work because he had *hurt* himself while working in the mine. If the foreman's report is of any importance at all, then it constituted notice to the Roundup Mining Company. If that company, and its managing officers and agents then were so careless that they

failed to investigate, their carelessness should not and would not prejudice Bender's claim for compensation.

The nature or cause of Bender's disability must rest upon the true medical facts, and not upon some layman's terminology, nor even upon negative findings of medical doctors.

While Bender might not have stated to the doctor exactly how he was injured, yet it is quite obvious that he did inform the doctor that he was injured and not that he was merely suffering from an illness. The record shows that the doctor's sole and only treatment consisted of the taking of an X-ray of Bender's back. *Surely, no one could assert that such procedure was adopted to cure any illness* from which Bender was then suffering.

When the doctor was unable to find by X-ray the cause of Bender's pain and suffering, he ordered that his patient be kept in the hospital, where the doctor kept the patient for a period of five days before permitting the patient to return to his home.

There is no question but that Bender eventually developed serious and disabling back trouble which he traces to the injury of January 30, 1957. Thereafter the disability grew progressively worse. See Gaffney v. Ind. Acc. Board, 129 Mont. 394, 287 P.2d 256, and 133 Mont. 448, 324 P.2d 1063.

Why Bender's doctor called his patient's disability an *illness* when he did not treat it as such is not explained. The fact remains that such statement by the doctor most certainly is not binding upon the claimant Bender when the evidence is that the injury suffered by him was of such a nature as to require surgery to correct and relieve his suffering.

I find nothing in the record wherein the United Mine Workers Union made any determination that what Bender suffered was not an accident covered by Workmen's Compensation. All the record shows is that the union paid the hospital bill for this uneducated, needy, injured coal miner. Subrogation is available to reimburse the union for its expenditures. Merely because a

claim is contested does not mean that the bills must remain unpaid until such time as the liability is determined. Nor does it follow that because an outsider should pay the outstanding hospital bills that the claimant's rights are thereby placed in jeopardy.

The fact that the claimant resumed work some days after sustaining the injury at the mine proves nothing at all. See Gaffney v. Industrial Accident Board, supra.

That Bender filed a written claim five and one-half months after suffering the injury likewise proves nothing. *Under the law, he had a year within which to file his claim.* The filing here was timely. Bender could have delayed a year, but he found himself and his family wholly without funds. There was no more appropriate time to request the compensation legally due to this claimant than at the time when his disability became total. Although he requested such compensation his request has been refused. He has been forced to rely upon the taxpayers of his county to provide for the wants and needs of himself and his family. The legal obligation of the Roundup Mining Company has thus been shifted to the taxpayers of Musselshell County.

I see no inconsistency with respect to Bender's claim or non-claim for his back injury. His testimony as to this matter is somewhat inconclusive. He testified:

"Q. Now, prior to this accident had you ever had back trouble at all? A. No.

"Q. Your back had never bothered you in any manner or form prior to that time? A. No.

"Q. Isn't it a fact, Mr. Bender that you have indicated to Dr. Berg, on your examination of May 14th, and I refer you to Plaintiff's Exhibit No. 1, where you indicated that you had back pain for about two years prior to May 14th? A. No, I had a little bit, maybe for a little while, and it would go away, but it never did, never any real back pains.

"Q. Well now then, had you had back pains prior to January 30th or hadn't you? A. No.

"Q. Then what you told Dr. Berg on May 14th was incorrect, that you had back pains for two years prior to that? A. I don't know what I told him."

The record discloses the following letter written to the Industrial Accident Board by W. S. Mather, attorney for the Roundup Mining Company:

"Our office is representing the defendant, Roundup Mining Company, in the above-entitled claim, which is set for hearing May 6, 1958, at Billings.

"We have reason to believe that the claimant, Philip Bender, had previously made claim to the Industrial Accident Board for a back condition while he was in the employ of the Republic Coal Company of Roundup, Montana.

"It would be appreciated if you will check your files relative to Mr. Bender and the Republic Coal Company to ascertain therefrom whether or not any claims have heretofore been filed by Mr. Bender and, if so, the date and nature thereof."

On April 11, 1958, the Industrial Accident Board replied to the above letter as follows:

"In accordance with your request of April 3, 1958, we checked back on our records but were unable to locate any accidental injury reported by the Republic Coal Company to Philip Bender."

The statement regarding the "pecuniary interest" of the claimant and his financial difficulties that appears on page 7 of the original typewritten majority opinion needs no extended answer. If the philosophy of the justices constituting the majority herein is indicated by this statement, and I believe it is, then this court has judicially repealed the statutory rule of liberal construction of the Workmen's Compensation Act. This statement and its obvious implications, combined with a denial of compensation to this claimant nullifies and destroys the entire philosophy upon which our Workmen's Compensation

Act is founded. This is done by judicial fiat and in my humble opinion is an act done outside and beyond the jurisdiction of this court.

Here, the Roundup Mining Company was estopped to deny that it had notice of this accident because notice was actually imparted to Sid Clark, an ostensible agent, who, with the Company's knowledge and consent held himself out to be such an agent. Accordingly, I would reverse the order of the district court and direct that it enter an order allowing the injured workman, Philip Bender, the compensation to which he is legally entitled.

### On Petition for Rehearing

It is ordered that appellant's petition for rehearing be denied.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE CASTLES and FRANK HASWELL, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN:

After careful study of the petition for rehearing, the objections thereto, and the brief of amici curiae, I think the petition has merit and should be granted. The majority opinion as it now stands shows that I concurred in it and I desire to have my name withdrawn therefrom. I favor hearing the cause re-argued and given further consideration.