AUGUST R. AHO, CLAIMANT, PLAINTIFF AND APPELLANT, *v.* BURKLAND STUDS, INC., EMPLOYER, AND EMPLOYERS LIABILITY INSURANCE CORPORATION, LTD., DEFENDANT AND RESPONDENT.

No. 11555.
Submitted Feb. 11, 1969.
Decided April 2, 1969.
452 P.2d 415.

(1)

Richard J Conklin (argued), White Sulphur Springs, for appellant.

Berg, O'Connell & Angel, Ben E. Berg, Jr. (argued), Bozeman, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal is the result of unfavorable rulings against the claimant, August R. Aho, before both the Industrial Accident Board and the district court. Claimant seeks compensation due to total disability under the Occupational Disease Act. Title 92, Chapter 13, R.C M.1947.

August R. Aho, at the time of the hearing, was 37 years of age, married, and the father of 5 children whom he had supported by doing automobile shop and body work. In addition, he operated heavy equipment and had worked for Burkland Studs, Inc. as a mechanic. His formal school education ended in the 7th grade.

According to the testimony of the claimant: at the time he went to work for Burkland Studs, Inc. as a mechanic in March 1964, he weighed from 210 to 220 pounds; some 18 months

later, when he terminated his employment, he was incapacitated because of a shortness of breath and unable to do a day's work; that because he was exposed to a concentration of diesel smoke while working for Burkland Studs, Inc., he either contracted emphysema or the hydrocarbon inhalation aggravated a pre-existing emphysema condition, which resulted in total disability; that when he had to terminate his employment, due to his disability, he took a "quit slip until he found out what was the trouble with me".

His physician, Dr. T. R. Clemons, diagnosed his condition as (1) arterial hypertension, (2) pulmonary emphysema, and (3) uncertain diagnosis of Pyelonephritis (inflammation of kidney) and referred claimant to the Montana State Hospital at Galen, an institution for the treatment of pulmonary diseases. See section 80-1701, R.C.M.1947.

At the hearing before the state Industrial Accident Board Dr. Clemons was allowed to read into the record a portion of a letter from the hospital.

"Mr. Aho was a patient in this hospital from December 28 to January 12 with a diagnosis of pulmonary emphysema and some evidence of hypertension. We could find no evidence of tuberculosis. We were hopeful that he would remain long enough so we could put him in positive pressure therapy and also consider a bronchoscopy and a bronchogram. He was, however, very anxious to return to work because of his family. * * *"

Within a month after the claimant returned from Galen the Board wrote the following letter to Dr. J. B. Spaulding of Helena, Montana:

"The above reference claims to be disabled from emphysema that has resulted from exposure to hydro-carbon diesel smoke poisoning.

"We are referring this man to you for a thorough examination, including all tests necessary to an accurate diagnosis.

4

."We should like your opinion in answer to the following questions:

."Is this man disabled from performing work of a. manual nature?

"Is the disability due to poisoning by exposure to hydrocarbons? * * *"

Dr. Spaulding examined claimant on February 3, 1967 and on February 7, 1967 reported to the Board the following:

"Physical examination reveals a well developed, well nourished middle aged man white male who is in no acute distress. He was 5'8½" tall, weighed 140 pounds and had a temperature of 100.2 degrees, a blood pressure of 130/80 and a pulse of 96. HEENT: Poor oral hygiene. Chest and Lungs were clear to PP & A, the heart was not enlarged, normal sinus rhythm, heart tones of good quality with no murmurs. The remainder of the physical exam was within normal limits. Lab data: a CBC revealed a hemoglobin of 17.6 grams, a WBC was 17,500 with 80% segs, 17% lymphocytes and 3% monocytes. A routine urinalysis was within normal limits. A routine PA and left lateral chest was within normal limits. An ECG revealed a normal ECG. Pulmonary function studies were obtained. The patient had a forced expiratory volume of 4400 cc's or over 100% of predicted. The one second forced expiratory volume was 3400 cc's or 95% of predicted and the maximum expiratory flow rate was 260 liters per minute with a predicted of 414 liters per minute. "The workup suggested that the patient had an active infection at the time of the examination. He gave no history suggestive of feeling acutely ill, and it was felt that this most likely represented an acute flu syndrome. By history, the patient has had some difficulty with chronic bronchitis, however on examination here he had an entirely normal chest X-ray, physical findings and pulmonary function test and my final diagnosis would have to be: 1) Chronic bronchitis and pulmonary emphysema examined for and not found. 2) Acute infection, etiology undetermined."

The claimant's attending physician testified at the Board hearing concerning his diagnosis of "Emphysema-aggravation of due to diesel fumes":

"Q. And this can be affected by whether he has or has not been exposed to hyddrocarbons? A. Correct.

"Q. And would this also be true as to whether he did or did not smoke cigarettes?' A. Yes.

"Q. Would the fact that this man had a habit of smoking at least a pack a day and continues to do that? A. It certainly would.

"Q. In other words, cigarette smoke would be as much as irritant as almost any other hydrocarbon? A. It would indeed.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. Once having determined the existence of pulmonary emphysema can you determine when the infection started, the onset of that infection, is there any way to date this? A. Pulmonary emphysema or the infection?

"Q. The date the pulmonary emphysema began to affect the patient or he caught it, or—A. I know of no way.

"Q. This is a gradual increasing condition or starting condition, whatever the case may be? A. That is correct \*　\*　\*

"RECROSS EXAMINATION
"BY MR. BERG:

"Q. You would be unable then to express an opinion as to whether the pulmonary emphysema which you found in Mr. Aho was or was not directly caused by any conditions of his employment? A. That is correct."

An appeal of the Board's ruling was made to the district court of the sixth judicial district. Dr. Clemons testified before the court as follows:

"Q. To rephrase it, if I may, the question, you cannot state with medical certainty what causes emphysema, is that correct? A. No, sir.

6

"Q. But you can state with medical certainty that the conditions which you just described that Mr. Aho was work-under, aggravated the emphysema, is that correct? A. In my opinion.

"Q. How much aggravation, can you make an opinion of that, is it possible? A. No.

"Q. If the aggravation had not been there could Mr. Aho have continued employment? A. I don't know.

"Q. Would it be possible, if he had examined him at that time, to make a determination of this? A. No."

The Industrial Accident Board held hearings on September 22 and November 10, 1967, at which the claimant, his wife, and Dr. Clemons all testified. The Board found claimant was not disabled from an occupational disease as the result of exposure to poisonous hydrocarbons in the course of his employment; his claim was denied.

On November 3, 1966, over a year after the claimant had quit his job, Mr. Conklin gave written notice to the Board that he was counsel for claimant and requested the case file. The file was sent to him by the Board on November 8, 1966, at the same time notifying Mr. Conklin that no claim for compensation had ever been filed with the Board.

It was on December 6, 1966, after Mr. Conklin had made his appearance, that mention was first made that this claim should be handled under the occupational disease portion of the Workmen's Compensation Act.

On the basis of the Board's record plus the additional evidence taken before him, Judge Shanstrom made the following findings of fact and conclusions of law which resulted in this appeal:

"That notice of disability, as required by Sections 92-1312 and 92-1313 of the Revised Codes of Montana for 1947, was not presented in writing under oath of the claimant to the

above named employer, or insurer or the Industrial Accident Board within thirty (30) days after the claimant knew or should have known of the nature of the impairment or within one (1) year after the last day upon which the employee actually worked for the employer against whom compensation is claimed, or at all.

"That the above named claimant failed to file his claim for compensation with the above named employer or insurer or the Industrial Accident Board within thirty (30) days of the time allowed by law for filing a notice of disability all as provided in Section 92-1313, Revised Codes of Montana, 1947.

"That the evidence is not sufficient to support claimant's allegation that he is disabled as a result of an occupational disease arising out of and in the course of his employment by Burkland Studs, Inc.

"That the evidence is not sufficient that the claimant is disabled from an occupational disease caused by poisoning by hydrocarbons arising out of and in the course of his employment by Burkland Studs, Inc.

## "CONCLUSIONS OF LAW

"That the findings of fact and conclusions of law, decision and order of the Industrial Accident Board in the above captioned matter be and the same hereby is sustained."

While several issues have been raised by the appellant the controlling issue is the sufficiency of the evidence issue since in our view there is a complete failure of proof on the part of claimant to come under the provisions of the Occupational Disease Act. The claimant has the burden of proving his case. Giving the medical testimony of all the doctors concerned the most liberal interpretation, we can find no evidence that clearly preponderates against the findings of either the Industrial Accident Board or the district court. This Court will not reverse the decision of a district court that affirms an order of the

8

Industrial Accident Board unless the evidence clearly preponderates against the findings. Bender v. Roundup Mining Co., 138 Mont. 306, 356 P.2d 469; Marker v. Zeiler, 140 Mont. 44, 367 P.2d 311; Jones v. Bair's Cafe, 152 Mont. 13, 445 P.2d 923.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, CASTLES and BONNER, concur.